UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CNAN GROUP S.P.A.,                          :     08 CV 1201 (PAC)
                                            :
                   Plaintiff,               :     ECF case
                                            :
      - against -                           :
                                            :
HASSAN ALI RICE EXPORT CO. d/b/a            :
IGEN SEA SHIPPING                           :
                                            :
                   Defendant.               :
----------------------------------------------------------------X

## DECLARATION OF ABDULLAH HASHWANI IN SUPPORT OF HASSAN ALI RICE EXPORT CO.'S MOTION TO VACATE PLAINTIFF'S RULE B ATTACHMENT

COUNTRY OF PAKISTAN            )
                               )
KARACHI                        )

Abdullah Hashwani, under the penalty of perjury of the laws of the United States, states as follows:

1. I submit this Declaration in support of Hassan Ali Rice Export Co.'s ("HAREC") motion to vacate the maritime attachment filed by CNAN GROUP S.P.A. ("CNAN") in the Southern District of New York.

2. I have been advised by Habib Bank that it has restrained a wire transfer belonging to HAREC in the amount of $443,032.79.

3. This payment was in no way related to the CNAN-Igen Sea Shipping ("Igen Sea") charter party for the motor vessel "AIN OUSSERA" (the "Vessel") which is the subject of instant litigation.

4. Igen Sea has no right, title or interest in the $443,032.79 wire transfer restrained by Habib Bank.

1

5.  HAREC is a commodities trader engaged in, *inter alia*, rice exporting from Pakistan. HAREC is a sole proprietorship existing under the laws of Pakistan with an office and place of business at Cotton Exchange Building I.I., Chundrigar Road, Karachi, Pakistan.

6.  Igen Sea is a sole proprietorship existing under the laws of Pakistan with an office and place of business at Iftikar Chambers, Hasart Mohani Road, Karachi, Pakistan.

7.  HAREC has no ownership interest in Igen Sea and Igen Sea has no ownership interest in HAREC. At no time was HAREC "doing business as" Igen Sea.

8.  HAREC and Igen Sea do not share offices, directors, employees, bank accounts or office space. Each is its own entity, separate and independent of the other.

9.  HAREC was never, at any time, a party to the maritime contract of charter dated November 7, 2005 entered into between CNAN and Igen Sea.

10. HAREC has not been named a party in the arbitration and has not agreed to arbitrate with CNAN.

11. It is a normal practice in the industry that if one original bill of lading is surrendered to the Master or Agent of a vessel, the other two originals of the set become void.

12. Igen Sea and The Rice Company advised CNAN that they were not required to produce all three original bills of lading.

13. The final discharge of the cargo was completed on March 26, 2006.

14. HAREC and Igen Sea are sole proprietorships and therefore not under the purview of the Securities and Exchange Commission of Pakistan ("SECP"), which is the regulatory body for private, public and/or publically listed companies in Pakistan. Presently, there is no central body similar to the SECP which registers sole proprietorships.

15. As both Igen Sea and HAREC are sole proprietorships, the words "Limited" or "Private" do not appear in their company names.

16. The government of Pakistan does not require national tax numbers as an income tax assessee.

17. Igen Sea is the only unit in Iftikhar Chambers which has it entrance from the Hasrat Mohani Road. All other offices in Iftikhar Chambers have their entrance through Altaf Husain Street.

18. After the cargo was loaded onto the Vessel, Igen Sea advised HAREC that it was having difficulty in meeting its obligations under the charter party, i.e. it could not make timely freight payments to CNAN under the charter party.

19. Igen Sea requested that HAREC make direct payments due and owing to it under the Fixture Recap directly to CNAN. Igen Sea also requested that HAREC make direct payments of the commissions due to the owners' brokers and Igen Sea's brokers and to pay the charge of the Karachi and discharge port agents.

20. In order to protect is interest in the cargo, and its rights under the Fixture Recap, HAREC remitted the freight payment directly to CNAN. HAREC also made commission payments to the brokers and paid the charges of the Karachi and discharge port agents directly at Igen Sea's request.

21. Pursuant to the terms of the charter party, HAREC was entitled to receive 1 ¼% of the freight commission. Under the terms of the Fixture Note, Igen Sea owed this money to HAREC and thus Igen Sea, not HAREC, requested that CNAN simply tender payment to HAREC.

22.   Igen Sea was not seeking to have HAREC pay its debts as HAREC was liable for the payments under the Fixture Recap.

23.   All communications to CNAN were made **by IGEN SEA** through Igen Sea's broker, Oceanic Trading and Shipping, Co.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Karachi, Pakistan on 8th day of May, 2008.



Abdullah Hashwani