Keith W. Heard (KH-8578)
Michael J. Walsh (MW-6578)
Burke & Parsons
100 Park Avenue
New York NY  10017-5533
(212) 354-3800

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**CNAN GROUP S.P.A.,**

                              **Plaintiff,**

        -against-

**HASSAN ALI RICE EXPORT CO. d/b/a
IGEN SEA SHIPPING,**

                              **Defendant.**

**DECLARATION OF**

**KEITH W. HEARD
IN OPPOSITION TO
DEFENDANT'S MOTION
TO VACATE AN
ATTACHMENT**

**Electronically Filed**

**08 CV 1201 (PAC)**

STATE OF NEW YORK       )
                        ).ss:
COUNTY OF NEW YORK )

        KEITH W. HEARD, under penalty of perjury of the laws of the United States,

declares as follows:

        1. I am an attorney admitted to practice before the Courts of the State of New

York and before this Honorable Court.  I am a partner in the law firm of Burke &

Parsons, counsel for plaintiff CNAN Group S.p.a., an agency or instrumentality of the

Algerian government.  I support this Declaration to place before the Court copies of

various documents in opposition to defendant Hassan Ali Rice Export Company's motion to vacate a Rule B maritime attachment.

2. Attached as Exhibit A to this declaration is a copy of Judge Pauley's Memorandum and Order in *Flame Maritime Limited v. Hassan Ali Rice Export Company*, 07 Civ. 4426 (S.D.N.Y. August 31, 2007).

3. Attached as Exhibit B to this declaration is a copy of the Verified Complaint in *Speybridge Shipping Company Ltd. v. Igen Sea Shipping and Hassan Ali Rice Export Company*, 05 Civ. 7458 (DC).

4. Attached as Exhibit C to this declaration is a copy of the "Stipulation and Order of Settlement and Dismissal of defendant Hassan Ali Rice Export Company's Motion to Vacate Attachment" in *Speybridge Shipping Company Ltd., supra*.

5. Attached as Exhibit D to this declaration is a copy of the Verified Complaint in *Salam International Transport & Trading Co. v. Igen Sea Shipping and Hassan Ali Rice Export Co.*, 06 Civ. 2841 (RMB).

6. Attached as Exhibit E to this declaration is a copy of the "Declaration of Aziz Ashiq Ali in Support of Hassan Ali Rice Export Co.'s Motion to Vacate Plaintiff's Rule B Attachment" in *Salam International, supra*.

7. Attached as Exhibit F to this declaration is a copy of the "Declaration of Captain Mazen Baddar" in opposition to defendant HAREC's motion to vacate the attachment in *Salam International, supra*.

8. Attached as Exhibit G to this declaration is a copy of the "Declaration of Abdullah Hashwani in Support of Hassan Ali Rice Export Co.'s Motion to Vacate Plaintiff's Rule B Attachment" in *Salam International, supra*.

9.  Attached as Exhibit H to this declaration is a copy of the "Declaration of Sheikh Dildar Hussain" (with attached photographs) in opposition to defendant HAREC's motion to vacate the attachment in *Salam International, supra.*

10.  Attached as Exhibit I to this declaration is a copy of an Internet screen print from "Jamal's Yellow Pages of Pakistan" showing no telephone listing for Igen Sea Shipping in Karachi.

11.  Attached as Exhibit J to this declaration is a copy of the "Declaration of Klaus C.J. Mordhorst" in opposition to defendant HAREC's motion to vacate the attachment in *Salam International, supra.*

### Declaration

I declare under penalty of perjury that the foregoing is true and correct and has been executed on July 10, 2008..

By_____

Keith W. Heard

8974_0019.doc

# EXHIBIT A

`UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

FLAME MARITIME LIMITED,                          :

                  Plaintiff,       :

       -against-                                :

HASSAN ALI RICE EXPORT COMPANY,                  :

              Defendant.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

07 Civ. 4426 (WHP)

MEMORANDUM AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __8/31/07__

Defendant Hassan Ali Rice Export Company ("Hassan") moves pursuant to Fed.

R. Civ. P. Supp. Rule E(4)(f) to vacate this Court's May 31, 2007 ex parte order of a maritime

attachment and garnishment (the "Order"). Alternatively, Hassan seeks to reduce the security of

Plaintiff Flame Maritime Limited ("Flame") pursuant to Supp. Rule E(6). For the following

reasons, Hassan's motion is denied in part and granted in part.

## BACKGROUND

On January 29, 1999, Hassan tendered white rice to Flame for transport from

Karachi, Pakistan to Moroni, Comoros Islands aboard the M/V Junior M. (Declaration of Owen

Duffy, dated Aug. 13, 2007 ("Duffy Decl.") ¶ 11.) Hassan allegedly failed to pay demurrage in

the amount of $59,721. (Duffy Decl. ¶ 13.) Flame initiated arbitration against Hassan in

London, England seeking to recover the unpaid demurrage. (Duffy Decl. ¶ 14.) On December

21, 1999, the arbitral panel ordered Hassan to pay Flame $55,988,77 and interest at an annual

rate of 7.5% from May 21, 1999 until the date of satisfaction (the "Arbitration Award"). (Duffy

Decl. ¶ 18.) On February 22, 2000, Flame filed an action to enforce the Arbitration Award

against Hassan in Karachi, Pakistan. (Duffy Decl. ¶ 22.) Nearly six years later, the Pakistani

High Court entered a decree on January 23, 2006 enforcing the Arbitration Award in the amount

of $55,988.77 plus £4,800 (the "Pakistani Judgment"). (Duffy Decl. ¶ 23.) The Pakistani Court

did not confirm the award of interest because it was contrary to Islamic law. (Duffy Decl. ¶ 24.)

Flame filed an application to execute the Pakistani Judgment, and Hassan appealed it. (Duffy

Decl. ¶¶ 25-26.) The High Court scheduled an appellate conference for May 19, 2007, but later

adjourned it <u>sine die</u>. (Duffy Decl. ¶¶ 27-28.) No further proceedings have occurred in the

Pakistani courts.

On May 30, 2007, Flame filed this maritime action against Hassan seeking an

attachment pending the outcome of Hassan's appeal. This Court issued the Order, which

authorized Flame to attach up to $150,000 of Hassan's assets located within this district.

Pursuant to the Order, Flame attached two electronic fund transfers in the amounts of $62,200

and $60,000, respectively. (Duffy Decl. ¶¶ 34-35.)


<u>DISCUSSION</u>

Hassan argues that the Attachment should be vacated because Flame has full

security for its claims. Hassan alternatively contends that, if an order of vacatur does not issue,

the amount of security should be reduced.


I. <u>Standard for Vacatur</u>

Rule E(4)(f) of the Supplemental Rules provides: "[W]henever property is

arrested or attached, any person claiming an interest in it shall be required to show why the arrest

or attachment should not be vacated or other relief granted consistent with these rules." Fed. R.

Civ. P. Supp. Rule E(4)(f); Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434,

445-46 (2d Cir. 2006); Winter Storm Shipping Ltd. v. TPI, 310 F.3d 263, 272 (2d Cir. 2002); Sea

Transp. Contractors, Ltd. v. Indus. Chemiques du Senegal, 411 F. Supp. 2d 386, 390 (S.D.N.Y.

2006).  To sustain any attachment, the plaintiff must demonstrate that "(1) it has a valid prima

facie admiralty claim against the defendant; (2) the defendant cannot be found within the district;

(3) the defendant's property may be found within the district; and (4) there is no statutory or

maritime law bar to the attachment." Aqua Stoli, 460 F.3d at 445.  Courts may also vacate an

attachment in certain limited circumstances where equity so demands.  See Aqua Stoli, 460 F.3d

at 444.  Specifically, vacatur is proper if "the plaintiff has already obtained sufficient security for

the potential judgment, by attachment or otherwise." Aqua Stoli, 460 F.3d at 445.

      Because it is uncontested that the formal requirements for attachment have been

satisfied by Flame, the only possible grounds for vacatur are equitable.  Hassan argues that the

Order should be vacated because it provided Flame with full security by furnishing a bank

guarantee for the amount of the Pakistani Judgment.  However, because Hassan has not proffered

evidence of such a guarantee, the attachment cannot be vacated on this ground.  See Mardas

Marmara Deniz Isletmeciligi A.S. v. Fast Shipping & Trading Co., 07 Civ. 179 (PKL), 2007 WL

2229058, at *4 (S.D.N.Y. Aug. 2, 2007) (party seeking to vacate attachment on equitable

grounds bears the burden of demonstrating sufficient security exists for potential judgment).

II.  Attachment Reduction

      In the alternative, Hassan seeks a reduction in the amount of the attachment.

"Because pre-judgment attachments are usually based upon reasonable estimates and not precise

facts, parties often attach amounts which are later deemed excessive in light of changes in

3

circumstance." <u>Dongbu Express Co., Ltd. v. Navois Corp.</u>, 944 F. Supp. 235, 237 (S.D.N.Y.

1996).  As such, "a reduction in security is 'freely granted upon a showing that the [attachment]

is excessive.'" <u>Dongbu</u>, 944 F. Supp. at 237 (quoting 7A James W. Moore et al., Moore's

Federal Practice P E14 (2d ed. 1996)); <u>see also</u> Fed. R. Civ. P. Supp. Rule E(6) ("Whenever

security is taken, the court may, on motion and hearing, for good cause shown reduce the amount

of security given."); <u>Mardas</u>, 2007 WL 2229058, at *3 (same); <u>Transportes Navieros y Terrestes</u>

<u>v. Fairmount Heavy Transp. N.V.</u>, 07 Civ. 3076 (LAP), 2007 WL 1989309, at *4 (S.D.N.Y. July

6, 2007) (same).

       The Order authorizes Flame to attach up to $150,000 of Hassan's assets.  That

amount exceeds the $55,988 plus £4,800 awarded in the Pakistani action.  Flame claims that the

difference comprises the interest that has accrued since the entry of the Arbitration Award.

However, the Pakistani High Court excluded interest, and Flame has not appealed.  Because

Flame stands to recover no more than the Pakistani Judgment, this Court will reduce the

attachment amount to reflect the maximum award that Flame can recover in those proceedings.

CONCLUSION

For the foregoing reasons, Defendant Hassan Ali Rice Expert Company's motion to vacate this Court's Order for Process of Maritime Attachment and Garnishment is denied. However, Hassan's motion to reduce the security to the sum of the Pakistani Judgment is granted. The parties are directed to submit an amended order by September 11, 2007.

Dated: August 31, 2007
       New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

George Murray, Esq.
Chalos, O'Connor & Duffy LLP
366 Main Street
Port Washington, NY 11050
*Counsel for Plaintiff*

Charles Edmund Murphy, Esq.
Lennon, Murphy & Lennon LLC
420 Lexington Avenue
Suite 300
New York, NY 10170
*Counsel for Defendant*

# EXHIBIT B

Richard A. Zimmerman, Esq.
Attorney for Plaintiff
233 Broadway – Suite 848
New York, NY 10279
Richard A. Zimmerman (RZ 0963)
Patrick C. Crilley (PC 9057)
(212) 962 -1818



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

SPEYBRIDGE SHIPPING COMPANY LTD.                    ECF CASE

               Plaintiff,                    05  CV  7458

     -against-

IGEN SEA SHIPPING and                               **VERIFIED COMPLAINT**
HASSAN ALI RICE EXPORT COMPANY.

               Defendants.
------------------------------------------------------------x

       Plaintiff, by its attorneys, Richard A. Zimmerman, Esq., and Patrick C. Crilley,

Esq., of counsel, complaining of the above named Defendants, alleges upon information

and belief as follows:

       1.  This is a case of admiralty and maritime jurisdiction under 28 U.S.C. §1333, as

hereafter more fully appears, and is an admiralty or maritime claim within the meaning of

Rule 9(h) of the Federal Rules of Civil Procedure.

       2.  At all material times, Plaintiff was and now is a foreign corporation organized and

existing under the laws of the United Kingdom.

       3.  At all material times, Defendant Igen Sea Shipping was and is a corporation

organized and existing under the laws of Malta.

4.  At all material times, Defendant Hassan Ali Rice Export Company was and is a corporation organized and existing under the laws of Pakistan.

5.  On or about January 19, 2005, Plaintiff entered into a contract of charter party with Defendant Igen Sea Shipping for a voyage charter of the Motor Vessel "LE SHENG" (the "Vessel" and the "Charter Party") for the carriage of approximately 21,000 Metric Tons of bagged rice from Karachi, Pakistan to West Africa.

6.  Defendant Hassan Ali Rice Export Company was named in the Charter Party as the "Shipper" of the cargo and the "Guarantor" of the performance of Defendant Igen Sea Shipping.  Defendant Hassan Ali Rice Export Company provided a signed written guarantee of the performance of the Charter Party for Defendant Igen Sea Shipping.

7.  The Vessel performed the intended voyage.

8.  Plaintiff fulfilled all of its obligations under the Charter Party.

9.  The Charter Party contained provisions whereby Defendant Igen Sea Shipping was obligated to pay to Plaintiff $14,000.00 per day, pro rata, for each day or part of the day that the Vessel was delayed beyond the agreed upon laytime provisions of the Charter Party.

10. The Vessel experienced long delays at the two discharge ports in West Africa resulting in demurrage and/or detention charges of at least $529,989.68 being owed by Defendant Igen Sea Shipping to the Plaintiff, no part of which has been paid to date, despite Plaintiff's demand for payment of same.

11. As a result of the long delays at the two West African ports, additional expenses for port agency charges and cargo surveyors were incurred in the amount of at least $5,036.65.  In accordance with the Charter Party, these charges are the responsibility of

the Defendant Igen Sea Shipping. Said Defendant has paid no part of these charges to date, although Plaintiff has duly demanded payment of same.

12. As a result of the long delays at the two West African discharge ports, the Vessel and Plaintiff lost the opportunity to perform subsequent employment that had been fixed for the Vessel resulting in damages to the Plaintiff in the amount of approximately $377,187.50. Payment of these damages has been demanded of Defendant Igen Sea Shipping, but no portion of same has been paid.

13. The receivers of the cargo in West Africa have lodged a claim against the head owner of the vessel for alleged damage to the cargo in the amount of $1,500,000.00. The head owner has claimed indemnity from the Plaintiff, who in turn has demanded indemnity from the Defendant Igen Sea Shipping. No portion of this claim has yet been paid by Defendant Igen Sea Shipping to date.

14. Defendant Igen Sea Shipping has breached its obligations under the Charter Party.

15. All payment demands upon Defendant Igen Sea Shipping have also been made upon Defendant Hassan Ali Rice Export Company as the guarantor of Defendant Igen Sea Shipping's performance under the Charter Party.

16. Defendant Hassan Ali Rice Exporting Company has not paid the demanded amounts and has breached the Charter Party and its guarantee obligation.

17. The Charter Party contains an agreement to arbitrate disputes as follows:

> "This Charter Party shall be governed by and construed in accordance with English law and any dispute arising out of this Charter Party shall be referred to arbitration in London in accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or re-enactment thereof for the time being in force. Unless the parties agree upon a sole arbitrator, one arbitrator shall be appointed by each party and the arbitrators so appointed shall appoint a third arbitrator, the decision of the three man tribunal thus constituted or any two of them, shall be final. On the receipt by one party of the nomination in writing of the other party's arbitrator, that party shall appoint their arbitrator

within fourteen days, failing which the decision of the single arbitrator
appointed shall be final."

18. Plaintiff reserves its right to pursue all of the remedies to which it is entitled in the

arbitration.

19. As a result of Defendant's aforesaid breach of its obligations under the Charter

Party, Plaintiff now estimates that it will be damaged in the following amounts:

| | | |
|---|---|---|
| a) Demurrage and/or detention damages | - | $529,989.68 |
| b) Port agency and cargo surveyors damages - | | $5,036.65. |
| c) Lost subsequent employment damages | ¬ | $377,187.50. |
| d) Cargo Claim Damages | - | $1,500,000.00 |
| e) Interest and costs including Arbitrators' and attorneys fees to be awarded in the London Arbitration (25% of Claims)- | | $603,053.00 |
| Total anticipated damages | - | $3,015,267.29 |

20. Upon information and belief, and after investigation, Defendant Igen Sea

Shipping and Defendant Hassan Ali Rice Export Company cannot be "found" within this

District for the purpose of Rule B of the Supplemental Rules of Civil Procedure for

Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendants have,

or will shortly have, assets within this District comprising of, *inter alia* cash, funds,

credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-

freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of

Defendant (hereinafter "ASSETS"), including but not limited to ASSETS at or moving

through banking institutions including but not limited to The Bank of New York, Inc.

and/or Citibank N.A. and/or HSBC Bank USA, N.A. and/or JPMorgan Chase and/or

UBS AG and/or Bank Of America, N.A. and/or Standard Chartered Bank, and/or

Northern Trust Corporation, and/or American Express Bank and/or Credit Suisse First

Boston.

WHEREFORE, Plaintiff prays:

    1.  That process in due form of law according to the practice of this Court in

admiralty and maritime jurisdiction issue against the Defendants, citing them to appear

and answer under oath all and singular the matters alleged.

    2.  That since the Defendants cannot be found within this District pursuant to Rule B

of the Supplemental Rules of Civil Procedure, this Court issue an Order directing the

Clerk of Court to issue Process of Maritime Attachment and Garnishment, pursuant to

Rule B of the Supplemental Rules of Civil Procedure and the United States Arbitration

Act, 9 U.S.C. § 8, attaching all claims, assets, cash, funds, credits, wire transfers,

accounts, letters of credit, electronic funds transfers, freights, sub-freights, charter hire,

sub-charter hire, or any other tangible and/or intangible assets belonging to, due, claimed

by, being held for or on behalf of, or being transferred for the benefit of Defendants,

including any such assets as may be in the possession, custody or control of, or being

transferred through any garnishee within this District, including, without limitation,

assets held by or at The Bank of New York, Inc. and/or Citibank N.A. and/or HSBC

Bank USA, N.A. and/or JPMorgan Chase and/or UBS AG and/or Bank Of America, N.A.

and/or Standard Chartered Bank, and/or Northern Trust Corporation, and/or American

Express Bank and/or Credit Suisse First Boston up to and including the amount of

$3,015,267.29 to secure the Plaintiff's claims including interest and costs, and that all

persons claiming any interest in the same be cited to appear and answer the matters

alleged.

3.   That Plaintiff may have judgment for its claims as aforesaid in the amount of

$3,015,267.29.

4.   That following any and all such attachments and garnishments, the Court stay

further proceedings pending the issuance of an arbitration award, and retain jurisdiction

for the purpose of entering judgment on the award against the property attached.

5.   That Plaintiff may have such other, further and different relief as the Court may

deem just and proper.

Dated: New York, New York
       August 23,  2005

Patrick C. Crilley (PC 9057)
Of Counsel to
Richard A. Zimmerman (RZ 0963)
Attorney for Plaintiff
233 Broadway – Suite 848
New York, NY 10279
(212) 619-1919

<u>VERIFICATION</u>

STATE OF NEW YORK　　　)
　　　　　　　　　　　　) ss.:
COUNTY OF NEW YORK　　)

Patrick C. Crilley verifies the following:

1. I am an attorney and acting as such "of counsel" to Richard A. Zimmerman, the attorney for the Plaintiff herein, and make the following Verification pursuant to the Federal Rules of Civil Procedure, Supplemental Rule B, 28 USC §1746, and the Local Rules of the United States District Court for the Southern District of New York. I have read the foregoing Verified Complaint, know the contents thereof, and believe the same are true to the best of my information and belief which is based upon an examination of documents provided by Plaintiff herein.

2. The reason that this Verification is made by the undersigned rather than by Plaintiff is that Plaintiff is a foreign corporation none of whose officers or directors are within the District.

3. Deponent is authorized to make this Verification on behalf of Plaintiff.

I declare under penalty of perjury that the foregoing is true and correct.

New York, New York
Executed on the 23rd day of August, 2005.

Patrick C. Crilley
233 Broadway - Suite 848
New York, New York 10279
(212) 619-1919

# EXHIBIT C



Richard A. Zimmerman, Esq.
Attorney for Plaintiff
233 Broadway – Suite 848
New York, NY 10279
Richard A. Zimmerman (RZ 0963)
Patrick C. Crilley (PC 9057)
(212) 962 -1818

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

SPEYBRIDGE SHIPPING COMPANY LTD.

                   Plaintiff,

         -against-

IGEN SEA SHIPPING and
HASSAN ALI RICE EXPORT COMPANY.

                  Defendants.

------------------------------------------------x

ECF CASE

Civil Action No.
05 CV 7458 (DC)

STIPULATION AND ORDER
OF SETTLEMENT AND DISMISSAL
OF DEFENDANT HASSAN
ALI RICE EXPORT COMPANY'S
MOTION TO
VACATE ATTACHMENT

WHEREAS, Plaintiff Speybridge Shipping Company Ltd. ("Speybridge") and Defendant

Hassan Ali Rice Export Company ("Hassan Ali"), have agreed to settlement of their disputes in

the above captioned action, the parties, by their respective undersigned attorneys, do hereby

agree and stipulate to the following settlement arrangement:

      1.   Hassan Ali will execute a letter of guarantee in the agreed form acceptable to

Speybridge; and

      2.   The parties agree to coordinate between themselves and the garnishee bank, Bank Of

New York, to deposit $399,950.00 of the Hassan Ali funds restrained in this action, into a joint

interest bearing escrow account as security for Hassan Ali's obligations under No. 1 above

and/or the Charter Party.  The undersigned attorneys shall be the joint controllers of said escrow

1

account under wording to be agreed between the parties. The funds so escrowed may be drawn down by Speybridge as partial satisfaction of any amount due Speybridge from Hassan Ali under the letter of guarantee in No.1 above, and

    3.  Speybridge otherwise agrees to release the property of Hassan Ali presently attached in New York, agrees it will not in the future attach any further property of Hassan Ali anywhere in the world, provided always that Hassan Ali is not in breach of its agreed guarantee obligations referred to in No. 1 above, and agrees to dismiss Hassan Ali, without prejudice, from the pending Rule B attachment action in New York.  Speybridge's Rule B attachment action may continue as against assets and property of Igen Sea Shipping should any such assets or property be found within the district.

    WHEREFORE it is hereby stipulated and So Ordered that:

    a)  Garnishee Bank of New York, is hereby ordered to coordinate with the parties to deposit $399,950.00 of Defendant Hassan Ali's restrained funds into a joint interest bearing account to be established and designated by the parties' attorneys.  Bank of New York shall have no further obligations with respect to the restrained funds once such deposit into escrow has been completed.

    b)  The Motion to Vacate Attachment brought on by Hassan Ali is hereby withdrawn, with prejudice, without costs or attorneys fees to either party as against the other.

    c)  Defendant Hassan Ali is hereby dismissed from the above captioned action, without prejudice, without costs or attorneys fees to either party as against the other, provided, however, that within 30 days of the So Ordered date hereof, if the joint escrow account provided for in No.2 above has not been established and/or the letter of guarantee provided for in No. 1 above has not been issued, counsel for plaintiff may apply by letter for restoration of the action as

against Hassan Ali, in which event the action will be restored as against Hassan Ali.

New York, New York
Dated: _Dec. 8_____, 2005

Patrick C. Crilley (PC 9057)
Of Counsel to
Richard A. Zimmerman
Attorneys for Plaintiff
233 Broadway, Suite 848
New York, NY 10279
(212) 619-1919

Thomas L. Tisdale (TL-5263)
TISDALE & LENNON, LLC
Attorneys for Defendant
Hassan Ali Rice Export Company
11 West 42nd Street, Suite 900
New York, NY 10036
(212) 354-0025

SO ORDERED _____, _____
                                              Date

3

# EXHIBIT D

Judge Berman

## 06 CV 2841

NOURSE & BOWLES, LLP
Attorneys for Plaintiff
One Exchange Plaza
At 55 Broadway
New York, NY 10006-3030
(212) 952-6200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
SALAM INTERNATIONAL TRANSPORT &             :
TRADING CO. PLC,                            :
c/o JORDAN NATIONAL LINES FOR SHIP          :
OPERATIONS,                                 :      06 Civ.       (   )
                                            :
                              Plaintiff,    :      **VERIFIED COMPLAINT**
                                            :
            - against -                     :
                                            :
IGEN SEA SHIPPING AND HASSAN ALI RICE       :
EXPORT CO.,                                 :
                                            :
                              Defendants.   :
-------------------------------------------------------------X

      Plaintiff, SALAM INTERNATIONAL TRANSPORT & TRADING CO. PLC,

c/o JORDAN NATIONAL LINES FOR SHIP OPERATIONS, by its attorneys NOURSE &

BOWLES, LLP, alleges on information and belief as follows:

### JURISDICTION AND VENUE

      1.   This is a case of admiralty and maritime jurisdiction within the meaning of Rule 9(h)

of the Federal Rules of Civil Procedure, and within the admiralty and maritime jurisdiction of the

United States and of this Honorable Court.

      2.   At all material times, Plaintiff, SALAM INTERNATIONAL TRANSPORT &

TRADING CO. PLC, was and now is a corporation organized under and existing by virtue of the

laws of the Republic of Jordan with an office and place of business at c/o JORDAN NATIONAL

2

LINES FOR SHIP OPERATIONS, P.O. Box 212955, Amman 11121, Jordan, and was the owner

of the MV FARAH 3 (the "Vessel"), a dry cargo ship of about 14,798 deadweight tons capacity

engaged in the carriage of dry cargo by water.

3.   Upon information and belief, at all material times, Defendant, IGEN SEA

SHIPPING ("Igen"), was and now is a corporation organized and existing under and by virtue of

the laws of Pakistan with an office and place of business at 102-108, 1st Floor Cotton Exchange,

Building I.I, Chundrigar Road, Karachi, Pakistan, and was the charterer of the Vessel.

4.   Upon information and belief, at all material times, Defendant, HASSAN ALI RICE

EXPORT CO. was the alter ego of Igen Sea Shipping, and was and now is a corporation

organized and existing under and by virtue of the laws of Pakistan with an office and place of

business at 102-108, 1st Floor Cotton Exchange, Building I.I, Chundrigar Road, Karachi,

Pakistan.

### FACTS GIVING RISE TO CLAIM

5.   On or about November 12, 2005, a voyage charter party (the "Charter") was made

between Plaintiff, as owner of the Vessel, and Defendant Igen, as charterer whereby Defendant

chartered the Vessel for the carriage of bagged rice from one safe port Karachi for discharge at

two safe ports, safe berths, Madagascar and West Africa.

6.   The Charter provided a total laytime of 2,000 metric tons per weather working day

for loading, Sundays and holidays excluded, even if used, and 1,000 metric tons per weather

working day for discharging, Sundays and holidays excluded, even if used.  Demurrage was

payable by Defendant to Plaintiff at the rate of $7,500 per day pro rata for all time that loading

and discharging exceeded the allowed laytime.  The Charter also provided that 100% of the

3

freight less commissions was payable within six banking days into Plaintiff's bank account upon completion of loading and demurrage was to be payable against all supporting documents within fifteen days after completion of discharge.

7. Pursuant to the Charter, the Vessel proceeded to and arrived at Karachi on or about November 26, 2005 and tendered her Notice of Readiness. The Vessel berthed on or about December 6, 2005 and commenced loading on the same day. The Vessel completed loading on or about December 13, 2005, and proceeded to Tamatave and Douala where it discharged its cargo. The Vessel completed discharge at Douala on or about February 17, 2006.

8. The Vessel was delayed at her load port of Karachi and was further delayed at both discharge ports of Tamatave and Douala. According to Plaintiff's laytime calculations, the Vessel was on demurrage during the voyage for 15.2180 days which amounts to $114,135.42 (15.2180 x $7,500.00 per day (or pro rata)).

9. Plaintiff sent a Debit Note to Defendant together with all supporting documents for demurrage in the amount of $114,135.42. Pursuant to the terms of the Charter, Defendant should have paid the demurrage within fifteen days after completion of discharge or latest when it received the Debit Note. However, despite various reminders from Plaintiff to Defendants, no demurrage has been received to date.

10. In addition, Plaintiff also seeks payment of $31,250.00 for extra disbursement account expenses owner was forced to pay at Douala on charterer's behalf. Despite written demand for payment, no payment has been received.

11. By reasons of the premises, Plaintiff has sustained damages in the amount of $145,385.42, as best as can presently be calculated.

4

12. The Charter also provided in that, if any dispute arises between the parties, the matter in dispute shall be referred to arbitration in London with English law. Plaintiff reserves its right to arbitrate. In addition to the unpaid demurrage and disbursement account expenses in the amount of $145,385.42, Plaintiff is also entitled, in London, to attorneys' fees and other taxable costs, incurred in bringing theses claims, which as best as can presently be calculated, are $87,140 representing 10,000 (GBP) or $17,428.00 for arbitrators' fees at the prevailing rate, and attorneys' fees at 40,000 (GBP) or $69,712.00.[1]

13. Arbitration of these disputes in London arbitration may take 3 years. Plaintiff is entitled to and would receive interest at the present prime rate of 6.5% or $16,992.00.

14. Plaintiff's total claim against Defendants for which it seeks security herein is $249,517.42.

15. All and singular the premises are true and within the admiralty and maritime jurisdiction of this Honorable Court.

16. Plaintiff brings this action by seeking an order of seizure of Defendants' goods and chattels, or credits and effects in the hands of garnishees to be named in the process, in the amount sued for herein, so that the Court shall have jurisdiction to direct Defendants to proceed with arbitration of Plaintiff's claim against Defendants and to retain jurisdiction to enter a judgment upon the arbitration award in the London arbitration.

---

[1] Calculated at exchange rate of 1.00 pound sterling to 1.74 U.S. dollar as updated April 11, 2006 by the IMF.

5

**WHEREFORE**, the Plaintiff prays the following:

1.  That process in due form of law according to the practice of this Court in causes of admiralty and maritime jurisdiction may issue against Defendants, Igen Sea Shipping and Hassan Ali Rice Export Co., and that they be personally cited to appear and answer the matters set forth above.

2.  That if the Defendants cannot be found within this District, then that Defendants' goods and chattels, or credits and effects within the hands of garnishees within the jurisdiction of this Court be attached by process pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure, Supplemental Rules for Certain Admiralty and Maritime Claims and in an amount sufficient to answer Plaintiff's claims of $249,517.42, the sum sued for in this Complaint;

3.  That the action thereafter be stayed pending arbitration award and that a judgment be entered upon the award of the aforesaid arbitration for the amount of any recovery by Plaintiff, together with interest, costs and disbursements of this action; and

4.  That this Court grant to Plaintiff such other and further relief as may be just and proper in the circumstances.

Dated:   New York, New York
         April 11, 2006

NOURSE & BOWLES, LLP
Attorneys for Plaintiffs

By:  _Rahul Wanchoo_____
     Rahul Wanchoo (RW 8725)
     One Exchange Plaza
     At 55 Broadway
     New York, NY  10006-3030
     (212) 952-6200

STATE OF NEW YORK     )
                                ) ss:

COUNTY OF NEW YORK   )

      RAHUL WANCHOO, being duly sworn, deposes and says:

      I am an attorney at law and a member of the firm of Nourse & Bowles, LLP, attorneys for

plaintiff.

      I have read the foregoing Verified Complaint and know the contents thereof and the same

are true to the best of my knowledge, information and belief.

      The reason that this verification is made by me and not by plaintiff is that plaintiff is a

foreign corporation and is not within this District.

_____
                   Rahul Wanchoo

Sworn to and subscribed to
before me this 11th day of
April, 2006.

_____
      Notary Public

CORINE M. COLLIGAN
Notary Public, State of New York
No. 01CO6014998
Qualified in Richmond County
Commission Expires 10/19/2006

# EXHIBIT E

TISDALE & LENNON, LLP
11 West 42nd Street, Suite 900
New York, NY 10036
(212) 354-0025 – phone
(212) 869-0067 – fax

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

SALAM INTERNATIONAL TRANSPORT &           :
TRADING CO., PLC
c/o JORDAN NATIONAL LINES FOR SHIP        :          06 CV 2841 (RMB)
OPERATIONS,
                                          :
                    Plaintiff,
                                          :
       - against –
                                          :
IGEN SEA SHIPPING and HASSAN ALI
RICE EXPORT CO.,                          :

                    Defendants.           :
----------------------------------------------------------X

**DECLARATION OF AZIZ ASHIQ ALI IN SUPPORT OF HASSAN ALI
RICE EXPORT CO.'S MOTION TO VACATE PLAINTIFF'S RULE B ATTACHMENT**

COUNTRY OF PAKISTAN              )
                                )
KARACHI                         )

       Aziz Ashiq Ali S/o Ashiq Ali Karim, under the penalty of perjury of the laws of the

United States, states as follows:

       1.       I am over eighteen years old and understand the obligations of an oath. I am the

sole proprietor of Igen Sea Shipping ("Igen Sea").

       2.       I make this Declaration based upon my own personal knowledge as well as upon

documents that I have received in the regular course of the business that I believe to be true and

accurate.

3.    Igen Sea maintains offices located at Ground Floor, Iftikhar Chambers, Hasrat Mohani Road, Karachi, Pakistan 7400.

4.    I confirm that Igen Sea has no direct or incorrect connection, link of ownership or any other relationship whatsoever with Hassan Ali Rice Export Co. ("Hassan Ali") except that Igen Sea occasionally charters vessels which it then subcharters to Hassan Ali.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

19-05-2006
_____
Date

_____
Aziz Ashiq Ali

2

PAKISTAN                                                                                                    100 RS.



Lic. No. 122, Shop No. 72, New Ruby Centre,
Talpur Road, Boulton Market, Karachi.

S.No. 71191     DATE

ISSUED TO WITH ADDRESS

THROUGH WITH ADDRESS

PURPOSE

VALUE RS. 100     (ATTACHED)

STAMP VANDOR'S SIGNATURE

0 2 MAY 2006

## AFFIDAVIT

I, Aziz Ashiq Ali S/o Ashiq Ali Karim, Muslim, adult, resident of House No.B-8, Noorani Saghar Colony, Ruby Street, Garden West, Karachi do hereby solemnly affirm and state as under:-

1.    That I am the Sole Proprietor of M/s Igen Sea Shipping having office at Ground Floor, Iftikhar Chambers, Hasrat Mohani Road, Karachi-74000.

2.    That I confirm and attest in the name and on behalf of M/s Igen Sea Shipping, Karachi that there is no direct or indirect connection, link of ownership or any relationship of whatsoever nature between Igen Sea Shipping and Hassan Ali Rice Export Company except Igen Sea Shipping have acted as Charterer of Vessels.

3.    That whatever stated above is true and correct to the best of my knowledge and belief.

Karachi dated this 11th day of May, 2006.



Deponent.

ATTESTED
Notary Public (Advocate)
NOTARY PUBLIC
Karachi
1 1 MAY 20

# EXHIBIT F

NOURSE & BOWLES, LLP
Attorneys for Plaintiff
One Exchange Plaza
At 55 Broadway
New York, NY 10006-3030
(212) 952-6200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
SALAM INTERNATIONAL TRANSPORT & : 
TRADING CO. PLC, :
c/o JORDAN NATIONAL LINES FOR SHIP :
OPERATION LTD., :                                                    06 Civ. 2841 (RMB)
                                                          :
                                        Plaintiff, :
                                                          :           **UNSWORN DECLARATION**
                                                          :           **UNDER PENALTY OF PERJURY**
                     - against - :
                                                          :
IGEN SEA SHIPPING AND HASSAN ALI RICE :
EXPORT CO., :
                                                          :
                                     Defendants. :
------------------------------------------------------------X

CAPTAIN MAZEN BADDAR hereby declares pursuant to 28 U.S.C. Section 1746:

1.    I am employed by Jordan National Lines for Ship Operation Ltd. in the position of

Operation Manager. As such, I am fully familiar with the matters stated herein. I have been

employed in shipping since 1979.

2.    Attached hereto as Exhibit 1 is a copy of the invoice dated 14th December, 2005

which Jordan National Lines sent to Igen Sea Shipping for ocean freight due for the charter of

the M/V FARAH 3 dated November 12, 2005 for a voyage charter from Karachi to West Africa.

As shown in this invoice, the gross freight due was $579,938.52. As is also shown on that

invoice, two brokerage commissions are to be deducted. They are 1.25% address commission

(referred to as "ADCOM" in Box 24 of the charter party) and 1.25% brokerage commission

payable to charterers' broker, Oceanic Shipping and Trading Co. Pursuant to Box 24 of the charter, both of these commissions are "to be deducted at source". In other words, Igen Sea as the "source" of the payment, is entitled to deduct those sums. It holds the "address commission" itself as a discount from freight without paying it to anyone else. It pays the 1.25% to Oceanic.

3.    Attached as Exhibit 2 is a copy of the notice received by JNLSO from its bank showing that it is the "Beneficiary Customer" of $361,440 "Ocean Freight Remittance M/V FARAH 3" paid by Hassan Ali Rice Export Co. Ltd. (as the "Ordering Customer").

4.    Attached as Exhibit 3 is a copy of the notice received by JNLSO from its bank showing that it is the "Beneficiary Customer" of $200,000 "Ocean Freight Remittance M/V FARAH 3" paid by Hassan Ali Rice Export Co. Ltd. (as the "Ordering Customer").

5.    I was extremely surprised to see that Hassan Ali paid the ocean freight which was invoiced to and should have been paid by Igen Sea. In my experience, it is unheard of for a party other than the named charterer to pay the ocean freight. Among other things, Hassan Ali's direct payment of freight to JNLSO made it impossible for Igen Sea to deduct its 1.25% address commission discount from the freight payable to JNLSO. This strongly suggests to me that Hassan Ali Rice Export Co. Ltd. is indeed the charterer of the M/V FARAH 3 from Jordan International.

I declare under penalties of perjury under the laws of the United States of America that the foregoing is true and correct.

By: _____
CAPTAIN MAZEN BADDAR

Executed On 17th May, 2006

At Amman, Jordan

-2-

Exhibit 1

## JORDAN NATIONAL LINES FOR SHIP OPERATION

Wadi Saqra-Arar St, Salam Trading Center, 3rd Floor- P.o Box 212955,Amman 11121,
Jordan.Tel: +962 6 5606035 Fax: +962 6 5692136 e-mail: chartering@jnlso.jo

Ref: 011412/FA
Date: 14ᵀᴴ DECEMBER 2005

Pages( 1 )

M/V FARAH 3 / IGEN SEA SHIPPING
CP DTD 12ᵗʰ November 2005

### FREIGHT INVOICE

QTTY   13331.92 MT X USD 43.50      USD 579,938.52

LESS

2.5 PCT TOTAL COMMISSION        USD  14,498.47
OAP                             USD   4000.00

-----------------------------------------------------------

BALANC DUE TO OWNER   =    USD  561,440.00

PLS REMIT NET USD 561,440.57 TO OWNERS' BANK AS FOLL:


BANK: ARAB BANK PLC.
        SHMEISANI BRANCH
        AMMAN - JORDAN

BENEFICIARY : JORDAN NATIONAL LINES FOR SHIP OPERATION
ACCOUNT NO. USD 259804 - 3 / 510
SWIFT CODE : ARABJOAX118

CORRESPONDENT BANK:
CREDIT SUISSE
HEAD OFFICE ZURICH
SWIFT CODE: CRESCHZZ80A
THROUGH THEIR CORRESPONDENT BANK IN USA : DEUTSCHE BANK TRUST CO,
NEW YORK
SWIFT : BKTRUS33

JNLSO
SENT
17.12.2005

Exhibit 2
p. 1

11.1111111

علي حسين علي الاحمد

22 Dec 05 18:01    1T

Message Type        MT 103 Single Customer Credit Transfer

Value date          22/12/05              Creation Date        2005/12/22 13:00:00

Currency            USD US Dollar         Amount               361,440.00

Priority            Normal                Monitoring           0

Error Details

Description                                            Tag
Sender's Reference                                     20:      PT0075GHBN03850
Bank Operation Code                                    23B:     CRED
Value Date/Currency/Interbank Settled Amount           32A:     22/12/05 USD US Dollar 361440.00
Currency/Instructed Amount                             33B:     PKR Pakistan Rupee 2:628569.00
Exchange Rate                                          36:      59.84
Ordering Customer                                      50K:     HASSAN ALI RICE EXPORT CO LTD
                                                                IST FLOOR COTTON EXCHANGE
                                                                BLDG.I.I.CHUNDRIGAR ROAD
                                                                KARACHI

Account With Institution                               57D:     ARAB BANK PLC
                                                                SHMEISANI BRANCH
                                                                JORDAN

Beneficiary Customer                                   59:      JORDAN NATIONAL LINES
                                                                A/C. # 259604-3/510

Remittance Information                                 70:      OCEAN FREIGHT REMITTANCE
                                                                M.V. KAMAL-3

Details of Charges                                     71A:     SHA

To MR. Farooqi

*Exhibit 3*

p. 2

199969.99

22 Dec 05 18:01    IT    1111111111
Message Type    MT 103  Single Customer Credit Transfer

Value Date    22/12/05

Creation Date    2005/12/22 12:51:10

Currency    USD US Dollar

Amount    200,000.00

Priority    Normal

Monitoring    0

Error Details

| Description | Tag | Value |
|---|---|---|
| Sender's Reference | 20: | IT00786H15N93R/6 |
| Bank Operation Code | 23B: | CRED |
| Value Date/Currency/Interbank Settled Amount | 32A: | 22/12/05 USD US Dollar 200,000.00 |
| Currency/Instructed Amount | 33B: | PKR Pakistan Rupee 11968000,00 |
| Exchange Rate | 36: | 59.54 |
| Ordering Customer | 50K: | HASSAN A.J RICE EXPORT CO. LTD |
| | | 1ST. FLOOR COTTON EXCHANGE |
| | | BLDG.I.I.CHUNDRIGAR ROAD |
| | | KARACHI |
| Account With Institution: | 57D: | ARAB BANK PLC |
| | | SHMEISANI BRANCH |
| | | JORDAN |
| Beneficiary Customer: | 59: | JORDAN NATIONAL LINES |
| | | A/C #25984-3/510 |
| Remittance Information | 70: | OCEAN FREIGHT REMITTANCE |
| | | M.V. FARAH 3 |
| Details of Charges | 71A: | SHA |

# EXHIBIT G

TISDALE & LENNON, LLP
11 West 42nd Street, Suite 900
New York, NY  10036
(212) 354-0025 – phone
(212) 869-0067 – fax

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————X

SALAM INTERNATIONAL TRANSPORT &      :
TRADING CO., PLC
c/o JORDAN NATIONAL LINES FOR SHIP   :     06 CV 2841 (RMB)
OPERATIONS,

                                     :

             Plaintiff,

                                     :

   – against –

                                     :

IGEN SEA SHIPPING and HASSAN ALI
RICE EXPORT CO.,                     :

             Defendants.             :
————————————————————X

### DECLARATION OF ABDULLAH HASHWANI IN SUPPORT OF HASSAN ALI RICE EXPORT CO.'S MOTION TO VACATE PLAINTIFF'S RULE B ATTACHMENT

COUNTRY OF PAKISTAN            )
                              )
KARACHI                        )

Abdullah Hashwani, under the penalty of perjury of the laws of the United States, states as follows:

1.    I am over eighteen years old and understand the obligations of an oath.  I am the Sole

      Proprietor of the Defendant Hassan Ali Rice Export Company (hereafter "Hassan Ali").

2.    I make this Declaration based upon my own personal knowledge as well as upon

      documents that I have received in the regular course of the business that I believe to be

      true and accurate.

3.      Upon information and belief, on or about November 12, 2005, Igen Sea Shipping (hereafter "Igen Sea") entered into a GENCON form Charter Party with Salam International Transport & Trading Co. PLC (hereafter "Salam" or "Plaintiff") for the M/V "Farah 3" (hereafter the "Vessel"). The Salam – Igen Sea Charter Party called for the carriage of approximately 13,300 metric tons of bagged rice from one to two safe berths, one safe port Karachi, Pakistan to one to two safe berths, safe ports Madagascar and West Africa. A true and accurate copy of the Salam - Igen Sea Charter Party is attached hereto as Exhibit "1." By operation of this Charter Party Igen Sea was the Vessel's Charterer. Hassan Ali was identified within Box 17 of this Charter Party as the Shipper of the cargo.

4.      Upon information and belief, Igen Sea maintains offices located at Ground Floor, Iftikhar Chambers, Hasrat Mohani Road, Karachi, Pakistan. See Box 4 of the Salam – Igen Sea Charter Party attached hereto as Exhibit 1. Please also see the Affidavit of Aziz Ashiq Ali S/o Ashiq Ali Karim of Igen Sea Shipping attached as an Exhibit to the Affidavit of Kevin J. Lennon.

5.      On November 12, 2005 Hassan Ali Rice Export Company ("Hassan Ali") entered into a Gencon form Charter Party for the Vessel with Igen Sea on terms identical - except for 1.25% ADCOM for IGEN. A true and accurate copy of the Igen Sea – Hassan Ali Charter Party is attached hereto as Exhibit "2." By operation of this Charter Party, IGEN Sea was the vessel's disponent owner and Hassan Ali was the Vessel's sub-charterer and it was again identified within Box 17 as the Shipper of the cargo.

6.  Hassan Ali maintains its offices at 1st Floor, Cotton Exchange Building, I.I. Chundrigar Road, Karachi Pakistan.  See Box 4 of Igen Sea – Hassan Ali Charter Party attached hereto as Exhibit 2.

7.  Igen Sea is a company fully separate and distinct from Hassan Ali.  There are no overlapping officers, directors, shareholders or employees.  The two companies do not share common offices and are not affiliated in any manner.  Upon information and belief, Igen Sea acts for many different Pakistani shippers including, from time to time, Hassan Ali.  However, any and all dealings between the two companies are at arm's length.

8.  There is no contract of charter between Salam and Hassan Ali.  Moreover, the Salam – Igen Sea Charter Party provides that it the parties thereto agreed to resolve disputes in London with English law to apply.  See Box 25 of the Salam – Igen Sea Charter Party attached hereto as Exhibit 1.

9.  Upon information and belief, Salam has not instituted arbitration proceedings against Igen Sea Shipping in London although it is required to do so under the Charter Party for any claim arising under its contract of charter with Igen Sea.

10.  Plaintiff has no colorable claim to institute arbitration proceedings against Hassan Ali.

11.  Review of Plaintiff's Affidavit in Support of Application for Maritime Attachment dated April 8, 2006 demonstrates that Salam's alter ego allegation against Hassan Ali is predicated solely on an Igen Sea e-mail attached as Exhibit A to Salam's Affidavit.  Salam does not identify any other basis in its Affidavit in support of the alter ego allegation against Hassan Ali contained in its Complaint.

12.  As stated above, Hassan Ali and Igen Sea entered into a Charter Party on terms identical to those between Salam and Igen Sea. Because Igen Sea found that after performance of its obligations under the charter party that Salam owed it $20,383.09 it simply directed Salam to make this payment directly to Hassan Ali.

13.  Upon information and belief, if Igen Sea had not directed Salam to pay Hassan Ali directly then Igen Sea would need to re-issue the payment to Hassan Ali under the terms of the back-to-back charter party it had entered with Hassan Ali. This is why it appears Igen Sea requested Salam to route the payment directly to Hassan Ali. It should be noted that in breach of its own obligations Salam has not issued this payment.

14.  Because Hassan Ali is not the alter ego of Igen Sea there is no basis in law for the Salam's Ex Parte Order of Attachment obtained from this Court allowing Salam to obtain security from HASSAN ALI for its alleged claims against Igen Sea. Thus, the Court should vacate its Ex Parte Order as against Hassan Ali.


Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


10-05-2006
Date

Abdullah Hashwani

4

# EXHIBIT H - 1

NOURSE & BOWLES, LLP
Attorneys for Plaintiff
One Exchange Plaza
At 55 Broadway
New York, NY 10006-3030

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SALAM INTERNATIONAL TRANSPORT &
TRADING CO. PLS,
c/o JORDAN NATIONAL LINES FOR SHIP
OPERATIONS

                              Plaintiffs

        -    against -

IGEN SEA SHIPPING AND HASSAN ALI RICE
EXPORT CO.,

                              Defendants

## UNSWORN DECLARATION UNDER PENALTY OF PERJURY

I, SHEIKH DILDAR HUSSAIN hereby declares pursuant to 28 U.S.C. Section 1746:

As instructed by M/s. Usmani & Iqbal I carried out investigation regarding M/s. IGEN Sea Shipping ("IGEN") as to their antecedents. Considering that it is not a registered company under the laws of Pakistan, there is no way of checking its details from the Registrar's office. Consequently on 13.02.2006 I personally visited the address given, namely Ground Floor, Iftikhar Chambers, Hasrat Mohani Road, Karachi. Iftikhar Chambers is a dilapidated building and I found that there were no offices of IGEN anywhere on the ground floor. I then investigated other floors of the building and found there were no offices of IGEN even there.

I was again instructed by M/s. Usmani & Iqbal to investigate IGEN at the same address on 12.05.2006. Accordingly I again proceeded to the same building and this time I found that there was a small name plate next to a shop whose shutters were down and the name plate read "IGEN SEA SHIPPING". When I examined the shutters I found that these had remained locked for a long time as one could see rust and even cob webs on the sides of the shutters. The building structure in the vicinity of this shop was exceedingly dilapidated and it would appear that this shop has not been used for a long time. As far as the sign of IGEN is concerned, this appears to have been put up there somewhat recently. I took photographs of the said shop which shows the dilapidated condition of the shop and the surrounding area. Unfortunately the name 'IGEN Sea Shipping' cannot be seen in the photographs as it was very small. My impression was that no business of any kind has been carried out from this location for quite some time. Upon enquiry from the other offices/shops in the building I was told that the building belongs to Hashwanis' and that this sign of IGEN was put up there only recently. It is not possible for me to say as to who these persons were because they were not forthcoming in this regard and were not interested in getting involved.

I am enclosing five in number photographs of the shop in question..

I declare under penalties of perjury under the laws of the United States of America that the foregoing is true and correct.

By: <u>SHEIKH DILDAR HUSSAIN</u>

Executed on <u>May 16, 2006</u>

At <u>Karachi, Pakistan</u>



# EXHIBIT H-2





# EXHIBIT H -3





# EXHIBIT I

Home | Make JYP my homepage | Tell a friend



**Jamal's**
**YELLOW PAGES OF PAKISTAN**                    HOME    SEARCH    PRODUCTS
**Silver Jubilee Edition** (Published regularly on annual basis since 1984)

**Premier Product Section**
A great opportunity to market your products Globally

Total **0** Record(s) found for **Igen Sea shipping in Karachi**                              Page(s):
                                                                                                    1

Your search - **Igen Sea shipping** - did not match any record.
**Suggestions:**

- Make sure all words are spelled correctly.
- Try different keywords.
- Try more general keywords.
- Search Company name, phone # or UAN within particular city for more precise results.

This page is created

**U.S. Publishers (Pvt) Ltd.**
18 C.P. & Berar Cooperative Housing Society, Karachi - 75350, Pakistan.
**Phones:** (92-21) 453 6321, 111-222-444  || **Fax:** (92-21) 4536330  || **E-mail:** info@jamals.com

# EXHIBIT J

NOURSE & BOWLES, LLP
Attorneys for Plaintiff
One Exchange Plaza
At 55 Broadway
New York, NY 10006-3030
(212) 952-6200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------X
SALAM INTERNATIONAL TRANSPORT &      :
TRADING CO. PLC,                                           :
c/o JORDAN NATIONAL LINES FOR SHIP    :
OPERATIONS,                                                  :      06 Civ. 2841 (RMB)
                                                                        :
                                        Plaintiff,            :
                                                                        :      **UNSWORN DECLARATION**
                                                                        :      **UNDER PENALTY OF PERJURY**
                          - against -                        :
                                                                        :
IGEN SEA SHIPPING AND HASSAN ALI RICE  :
EXPORT CO.,                                                   :
                                                                        :
                                        Defendants.      :
-----------------------------------------------X

KLAUS C.J. MORDHORST hereby declares pursuant to 28 U.S.C. Section 1746:

1.    I am the President of Leffler Chartering, Inc., a ship brokerage and consulting firm.

2.    I have been employed as a ship broker continuously and on a full-time basis since 1958. As such, I am fully familiar with all aspects of the ship brokerage industry. Among my professional memberships, I am a member of the Society of Maritime Arbitrators, Inc. and currently serve as the President of that organization. The Society of Maritime Arbitrators, Inc. is generally considered to be the leading arbitral body in the United States to hear and decide disputes arising out of charter parties.

3.    It is quite common for a "chain" of charters to exist in which a vessel owner charters its vessel to a charterer, who in turn sub-charters the vessel to a sub-charterer. Sometimes, the vessel is then further sub-chartered, so that the chain can become quite long. In the industry, the first charter in the chain is called the "head charter". The "middleman" who is the charterer under the head charter, and subsequently is the owner under the sub-charter, is called the "disponent owner". It is normal, in such chains of charters, for each entity which "charters in" the vessel and then in turn "charters out" the vessel, i.e., each disponent owner, to make a profit on that transaction. In other words, the disponent owner will "charter in" the vessel at a lower freight rate than it "charters out" the vessel. Indeed, if the disponent owner does not make a profit on the sub-charter by charging a higher freight rate, there would be no bona fide business reason for the charter to exist.

4.    For these very reasons, it is standard and typical in a "chain" of charters that the owner will send a freight invoice to its charterer who will in turn both pay that freight invoice which it has received from the owner and send its own freight invoice to its sub-charterer. The sub-charterer will in turn pay the freight invoice of the disponent owner. **It is most extraordinary and unusual** for a sub-charterer to pay freight directly to a head owner with whom it has no direct contractual relations. Indeed, if a sub-charterer did so, it would fail to pay the invoice from the party with whom it contracted (the disponent owner) and be in breach. Further, in an ordinary and typical transaction, it would be essentially impossible for the sub-charterer to pay a sum to the head owner, which simultaneously satisfied the owner's invoice to its charterer (the disponent owner), but did not overpay or underpay the amount which the sub-charterer owed to the disponent owner. This is true for two reasons:

a) As I stated above, in a normal chain of charters, there is an increase in the freight rates with each sub-charter so that the sub-charterer at the bottom of the chain will have an obligation to pay a greater sum than the owner would have invoiced to the first charterer in the chain.

b) Brokerage commission deducted from each charter would invariably lead to a difference in the freight which the owner invoiced to its charterer and which the bottom sub-charterer in a chain would pay.

5.   I have received and reviewed:

a) The charter party of the M/V FARAH 3 dated Karachi 12-11-2005 between Salam International Transport & Trading Co. PLC, c/o Jordan National Lines for Ship Operations ("JNLSO"), as owners, and Igen Sea Shipping, as charterers; and

b) The charter party of the M/V FARAH 3 dated Karachi 12-11-2005 between Igen Sea Shipping, as owners, and Hassan Ali Rice Export Co., as charterers.

Those charters are attached hereto, respectively, as Exhibits 1 and 2.

6.   The two charters, Exhibits 1 and 2, appear to me to be exact duplicates of each other except that (a) the name of owner and charterer in Boxes 3 and 4 are different and (b) the brokerage commission in Box 24 is different.

7.   Significantly, the freight rates of the two charters are identical (Boxes 13 in both charters). **I find this to be extraordinary and unusual.** Igen Sea has agreed to accept all of the risk and obligations, both of being a charterer (under the head charter) and an owner (under the sub-charter), yet except only for the inclusion of an address commission it would not be paid one



single cent for accepting these risks. To my mind, there is no valid business purpose for Igen Sea to accept such risks without real compensation.

8. Pursuant to Box 24 of the head charter, two commissions are "to be deducted at source". Those commissions are 1.25% ADCOM and 1.25% to Oceanic, the ship broker named in Box 1. In the industry ADCOM means "address commission", here of 1.25%. In the industry, an address commission is a discount from freight. The charterer simply deducts from freight and holds for itself the permitted address commission. This is consistent with the language "to be deducted at source" in Box 24. Thus, under the head charter, Exhibit 1, Igen Sea is entitled to deduct from the sum of freight which it pays to owners 1.25% of such freight, demurrage or deadfreight ("F/D/D"). Likewise, Igen Sea is also obliged to pay 1.25% to its broker Oceanic.

9. The brokerage commission clause of the sub-charter, Box 24 (Exh. #2), has a slight variation from the head charter. It provides

> "1.25% ADCOM <u>to Igen</u> and 1.25% to Oceanic on F/D/D to be deducted at source".

This clause is NOT consistent with normal practice in the world of commercial ship brokerage. As I stated above, an address commission is a discount from freight which is held by the charterer. This above clause in the sub-charter instead says "ADCOM to Igen" suggesting that the charterer's discount should be paid to the disponent owner. Therefore, under this charter, the charterer (Hassan Ali Rice) will be paying two brokerage commissions, one to the disponent owner and one to Oceanic, but never receives its address commission discount. Thus, while in the head charter the address commission offsets the brokerage commission so that the charterer pays no net commission, in this sub-charter, the charterer will pay two commissions totaling 2.50%.



10.   Further, the combination of these two charters converts Igen Sea to the role of a broker.  Specifically, as stated in paragraph 7, Igen Sea has not earned anything on differential in the freight rates between the two charter parties (because there is no rate differential) and the only compensation that Igen Sea would receive is an address commission of 1.25%.  Based on my almost 50 years' experience, 1.25% is typical for commission a broker receives under charter party transactions.  Indeed, this is also borne out by the broker Oceanic Shipping receiving identical 1.25% commissions under each charter party.

11.   While Igen Sea's compensation is at most as a broker, it has – at least on paper – accepted the risks and obligations of being both a charterer and owner.  **I find this extraordinary and unusual.**

12.   It is my understanding that Hassan Ali Rice Export Co. has paid the freight which JNLSO invoiced to Igen Sea.  As I stated above, I find it unusual that, under any circumstances, a wholly separate and distinct corporate entity would pay the obligations of another separate and distinct corporate entity.  Further, such direct payment removes the ability of Igen Sea to deduct an address commission from its payment to head owners.  Additionally, it would have required that Hassan Ali transfer separate sums to Igen Sea if it intended to pay freight and address commission to Igen Sea.

13.   In sum, based on a combination of the above factors, it is my opinion that there is no valid commercial purpose for the existence of Igen Sea in this chain of charters and, further, that Igen Sea never actually participated in the chain of charters so that Hassan Ali is the one and only charterer.



I declare under penalties of perjury under the laws of the United States of America that my foregoing opinion is true and correct.

By: _____
       KLAUS C.J. MORDHORST

Executed On May 17, 2006

At Kinnelon, New Jersey, U.S.A.

-6-

The first page of each of the two charters

Mr. Mordhorst reviewed (Exhibits 1 and 2 to his

Declaration) are annexed hereto.  The complete

charters can be accessed on-line as

Exhibits 1 and 2 to Document 14 of the Docket Sheet in

*Salam Int'l Transport & Trading Co. v. Igen Sea Shipping*

*and Hassan Ali Rice Export Co.*, 06 Civ. 2841 (S.D.N.Y. May 25, 2006).

| 1 Shipbroker<br><br>**OCEANIC SHIPPING & TRADING CO.**<br>**MARINE PRIDE BUILDING, SUITE # 402,**<br>**P/NO. BC-2, BLOCK-7, K.D.A. SCHEME-5**<br>**KARACHI** | RECOMMENDED<br>THE BALTIC AND INTERNATIONAL MARITIME COUNCIL<br>UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 and 1994)<br>(To be used for trades for which no specially approved form is in force)<br>CODE NAME: "GENCON"    Part I |
|---|---|
| | 2 Place and date<br><br>**KARACHI - 12-11-2005** |
| 3 Owners/Place of business (Cl.1)<br><br>**SALAM INTERNATIONAL TRANSPORT & TRADING CO. PLC**<br>C/O Jordan National Lines for Ship Operations (JNLSO)<br>P.O. Box 212955<br>Amman 11121, Jordan | 4 Charterers/Place of business (Cl.1)<br><br>**IGEN SEA SHIPPING**<br>**GROUND FLOOR, IFTIKHAR CHAMBERS, HASRAT MOHANI**<br>**ROAD, KARACHI 74000** |
| 5 Vessel's name (Cl.1)<br>**MV "FARAH 3"** | 6 GT/NT (Cl.1)<br><br>**9123 / 6071** |
| 7 DWT all told on summer load line in metric tons (abt.) (Cl.1)<br><br>14797.9 ON 8.973 M | 8 Present position (Cl.1)<br><br>**TRADING** |
| 9 Expected ready to load (abt.) (Cl.1)<br><br>**LAYCAN: 25/30TH NOVEMBER 2005** | |
| 10 Loading port or place (Cl.1)<br><br>**1-2SB(S) 1SP KARACHI, PAKISTAN** | 11 Discharging port or place (Cl.1) :<br>1-2SBEA WEST AFRICA AAAA INDI TEMA A/O ABIDJAN A/O<br>LOME A/O CONAKRY A/O COTONOU A/O FREETOWN |
| 12 Cargo (also state quantity and margin in Owners' option, if agreed, if full and complete cargo not agreed state "part cargo" (Cl.1)<br><br>FULL LOAD BAGGED RICE SF MAX 52' (13,300 MT) | |
| 13 Freight rate (also state whether freight prepaid or payable on delivery) (Cl.4)<br><br>USD 42.50 PMT FIOS BASIS 1/1 LOME A/O TEMA A/O ABIDJAN<br>USD 43.50 PMT FIOS BASIS 1/2 | 14 Freight payment (state currency and method of payment also beneficiary and bank account) (Cl.4)<br><br>**SEE CLAUSE 28** |
| 15 State if vessel's cargo handling gear shall not be used (Cl.5)<br><br>**N/A** | 16 Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl.6)<br>**NON-REVERSIBLE** |
| 17 Shippers/Place of business (Cl.6)<br>**HASSAN ALI RICE EXPORT CO**<br>**KARACHI - PAKISTAN** | (a) Laytime for loading<br><br>**2000 MTONS PWWD SHEX EIU** |
| 18 Agents (loading) (Cl.6)<br><br>**CHARTERERS AGENT BASIS FREE D/A TO OWNERS** | (b) Laytime for discharging<br><br>**1000 MTONS PWWD SHEX EIU** |
| 19 Agents (discharging) (Cl.6)<br><br>**CHARTERERS AGENT BASIS FREE D/A TO OWNERS** | (c) Total laytime for loading and discharging |
| 20 Demurrage rate and manner payable (loading and discharging) (Cl.7)<br><br>**USD 7,500/PDPR HDWTSBE**<br>**(SEE CLAUSE 45)** | 21 Cancelling date (Cl.9)<br><br>**30TH NOVEMBER, 2005** |
| | 22 General Average to be adjusted at (Cl.12)<br><br>**LONDON** |
| 23 Freight Tax (state if for the Owners' account (Cl. 13(c))<br><br>**SEE CLAUSE 49** | 24 Brokerage commission and to whom payable (Cl. 15)<br><br>**1.25 % ADCOM + 1.25% TO OCEANIC ON F/D/D TO BE DEDUCTED AT SOURCE** |
| 25 Law and Arbitration (state 19 (a), 19 (b) or 19 (c) of Cl. 19; If 19 (c) agreed also state Place of Arbitration) (if not filled in 19 (a) shall apply) (Cl. 19)<br><br>**IN LONDON AND ENGLISH LAW TO APPLY** | |
| (a) State maximum amount for small claims/shortened arbitration (Cl.19)<br><br>N/A | 26 Additional clauses covering special provisions, if agreed<br><br>**CLAUSE 27-63** |

Copyright, published by The Baltic and International Maritime Council (BIMCO), Copenhagen

It is mutually agreed that this Contract shall be performed subject to conditions contained in this Charter Party which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners)<br><br>**SALAM INTERNATIONAL TRANSPORT & TRADING CO. PLC**<br>C/O Jordan National Lines for Ship Operations (JNLSO) | Signature (Charterers)<br><br>**IGEN SEA SHIPPING** |
|---|---|

*Mordhorst  Exh. 1*

C.23

Printed and sold by witherby Company Limited, 32/36 Aylesbury Street, London EC1R OET. Tel. No. 0171 251 5341  Fax No. 0171 251 1296<br>by authority of The Baltic and International Maritime Council, (BIMCO) Copenhagen.

RECOMMENDED
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL
UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 and 1994)
(To be used for trades for which no specially approved form is in force)
CODE NAME: "GENCON"                                        Part I

| | |
|---|---|
| **1** Shipbroker<br><br>**OCEANIC SHIPPING & TRADING CO.**<br>**MARINE PRIDE BUILDING, SUITE # 402,**<br>**P/NO. 8C-Z, BLOCK-Y, K.D.A. SCHEME-5**<br>**KARACHI** | **2** Place and date:<br><br>**KARACHI - 12-11-2005** |
| **3** Owners/Place of business (Cl.1)<br><br>**IGEN SEA SHIPPING**<br>**GROUND FLOOR IFTIKHAR CHAMBERS**<br>**HASRAT MOHANI ROAD,**<br>**KARACHI - PAKISTAN** | **4** Charterers/Place of business (Cl.1)<br><br>**HASSAN ALI RICE EXPORT COMPANY**<br>**1ST FLOOR, COTTON EXCHANGE BUILDING,**<br>**I.I. CHUNDRIGAR ROAD,**<br>**KARACHI - PAKISTAN** |
| **5** Vessel's name (Cl.1)<br>**MV "FARAH 3"** | **6** GT/NT (Cl.1)<br><br>9123 / 6074 |
| **7** DWT all told on summer load line in metric tons (abt.) (Cl.1)<br><br>14797.9 ON 8.073 M | **8** Present position (Cl.1)<br><br>**TRADING** |
| **9** Expected ready to load (abt.) (Cl.1)<br><br>LAYCAN: 25/30TH NOVEMBER 2005 | |
| **10** Loading port or place (Cl.1)<br>1-2BB(S) 1SP KARACHI, PAKISTAN | **11** Discharging port or place (Cl.1) :<br>1-2SBPA WEST AFRICA RANA DKDR TEMA A/O ABIDJAN A/O<br>LOME A/O CONAKRY A/O COTONOU A/O FREETOWN |
| **12** Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo" (Cl.1)<br><br>FULL LOAD BAGGED RICE SF MAX 52' (13,300 MT) | |
| **13** Freight rate (also state whether freight prepaid or payable on delivery) (Cl.4)<br><br>USD 42.50 PMT FIOS BASIS 1/1 LOME A/O TEMA A/O ABIDJAN<br>USD 43.50 PMT FIOS BASIS 1/2 | **14** Freight payment (state currency and method of payment also beneficiary and bank account) (Cl.4)<br><br>SEE CLAUSE 28 |
| **15** State if vessel's cargo handling gear shall not be used (Cl.5)<br><br>N/A | **16** Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl.6)<br><br>**NON-REVERSIBLE** |
| **17** Shippers/Place of business (Cl.6)<br>**HASSAN ALI RICE EXPORT CO**<br>**KARACHI - PAKISTAN** | (a) Laytime for loading<br><br>2000 METONS PWWD SHEX EIU |
| **18** Agents (loading) (Cl.6)<br><br>**CHARTERERS AGENT BASIS FREE D/A TO OWNERS** | (b) Laytime for discharging<br><br>1000 METONS PWWD SHEX EIU |
| **19** Agents (discharging) (Cl.6)<br><br>**CHARTERERS AGENT BASIS FREE D/A TO OWNERS** | (c) Total laytime for loading and discharging |
| **20** Demurrage rate and manner payable (loading and discharging) (Cl.7)<br><br>USD 7,500/PDPR HDWTSBE<br>(SEE CLAUSE 49) | **21** Cancelling date (Cl.9)<br><br>30TH NOVEMBER, 2005 |
| | **22** General Average to be adjusted at (Cl.12)<br><br>**LONDON** |
| **23** Freight Tax (state if for the Owners' account (Cl.13(c))<br><br>SEE CLAUSE 49 | **24** Brokerage commission and to whom payable (Cl.15)<br><br>1.25% ADCOM TO IGEN + 1.25% TO OCEANIC ON<br>F/D/D TO BE DEDUCTED AT SOURCE |
| **25** Law and Arbitration (state 19 (a), 19 (b) or 19 (c) of Cl. 19; if 19 (c) agreed also state Place of Arbitration) (if not filled in 19 (a) shall apply) (Cl. 19)<br><br>IN LONDON AND ENGLISH LAW TO APPLY | |
| (a) State maximum amount for small claims/shortened arbitration (Cl.19)<br><br>N/A | **26** Additional clauses covering special provisions, if agreed<br><br>CLAUSE 27-83 |

It is mutually agreed that this Contract shall be performed subject to conditions contained in this Charter Party which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| **IGEN SEA SHIPPING**  | **HASSAN ALI RICE EXPORT COMPANY**  |

Mordhorst Exh. 2

C.23
Printed and sold by witherby Company Limited, 32/36 Aylesbury Street, London EC1R 0ET. Tel. No. 0171 251 5341 Fax No. 0171 251 1296
by authority of The Baltic and International Maritime Council (BIMCO) Copenhagen.

Copyright, published by The Baltic and International Maritime Council (BIMCO), Copenhagen