Keith W. Heard (KH-8578)
Michael J. Walsh (MW-6578)
Burke & Parsons
100 Park Avenue
New York NY 10017-5533
(212) 354-3800

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CNAN GROUP S.P.A., <br><br> Plaintiff, <br><br> -against- <br><br> HASSAN ALI RICE EXPORT CO. d/b/a IGEN SEA SHIPPING, <br><br> Defendant. | DECLARATION OF <br><br> JEFFREY BLUM IN OPPOSITION TO MOTION TO VACATE ATTACHMENT <br><br> Electronically Filed <br><br> 08 CV 1201 (PAC) |

UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND

CITY OF LONDON

JEFFREY BLUM, pursuant to the provisions of 28 U.S.C. § 1746, declares and states as follows:

1. I am 55 years old and have worked since 1973 as a shipbroker, ship operator, ship owner and charterer. I have been teaching shipbroking methods and maritime law since 1984 and have been an expert witness since 1984 and an arbitrator since 1994. I have been a Fellow of The Institute of Chartered Shipbrokers ("ICS") since 1979 and have recently completed two years of office as Chairman of the London Branch, the largest branch of the ICS; I still sit on the ICS Controlling Council. In addition, I have been a member of the Baltic Exchange since 1976.

1

2. I have been asked to review and give my professional opinion on three documents, namely Exhibits 1 and 5 and 14 to HAREC's Memorandum of Law dated 20 June 2008, being

"(1)" the Charter Party dated November 7th 2005 between CNAN as Shipowner and Igen Sea Shipping (hereinafter referred to as "ISS") as Charterer

"(5)" ISS's Fixture Recap dated November 19th 2005 sent to Hassan Ali Rice Export Company (hereinafter referred to as "HAREC")

"(14)" ISS's letter dated November 19th 2005 sent to HAREC referring to a "back to back" charter apparently dated 7th November 2005 and to the rate of commission to be paid to ISS.

Furthermore, I have been told in my instructions from CNAN's lawyers Messrs Thomas Cooper that CNAN's shipbrokers were Helmgale of Montpellier in France.

3. After careful examination of these three documents, I hereby set out my opinion as a professional shipbroker and wish to address the main aspects of this case within the limits of the documentation which is available.

(A) The charter party between CNAN and ISS dated 7th November 2005 makes no mention of HAREC and shows ISS as the charterer, i.e. as a principal in this contract. It also shows the freight rate in box 13 as US Dollars 42.00 per metric tonne and shows the commission in box 24 as "5% total on the freight, deadfreight and demurrage". Crucially, there is no reference to the intended recipient or recipients of this 5% commission, despite the instruction in the heading of box 24. The only shipbroker mentioned in this charter party is Oceanic Shipping & Trading Co of Karachi. Equally crucially, box 24 makes no reference to CNAN's shipbrokers Helmgale nor reference to any address commission nor reference to how and to whom the commission of 5% should be divided. In my experience, such 5% total

2

commission should be divided as 1¼ % to Helmgale and 1¼ % to Oceanic Shipping & Trading, being the two known brokers, leaving 2½ % unallocated.

(B) Clause 51 of the charter party between CNAN and ISS specifically states that "the freight rate under this charter party is to be kept entirely confidential from all third parties." Since ISS is a principal party to that contract, ISS seem to be in breach of this clause by having fixed the same ship to HAREC on the same date at the same declared freight rate on a declared "back-to-back" basis. This is not the behaviour to be expected of a principal charterer.

(C) Exhibits 5 and 14 are letters which give me the very strong impression that ISS were acting as brokers or agents for HAREC.

(D) Exhibit 5 purports to be a fixture recap and covers some of the main points which should be included in a proper fixture recap. It is vital to note that ISS refer to "our commission 1¼ % on freight". ISS omit any reference to their commission on deadfreight and demurrage to which a broker is entitled per box 24 of the charter party in which ISS is shown as the charterer. No principal would mention commission in that manner in a recapitulation of a back-to-back fixture to another principal.

(E) Furthermore, this ISS fixture recap mentions exactly the same freight rate "US$ 42.00 pmt FIOS basis 1/3 free D/A all ports" as is to be seen in box 13 of the charter party between CNAN and ISS. In my experience, it is highly unusual for any principal who sub-charters a vessel to another principal not to build in some profit margin on the sublet freight by charging a higher freight rate to the sub-charterer.

(F) Exhibit 5 refers to "other relevant terms as per draft working charter party" rather than referring to a proforma or previous charter party with its previous date. Even if there had not been a previous fixture between ISS and HAREC, no principal would usually refer to agreed terms as a "draft working charter party". However, an inexperienced broker might do so.

3

(G) Exhibit 5 makes no reference to the date of the fixture between ISS and HAREC, although the letter is apparently dated 19th November 2005.

(H) Exhibit 14 is another letter from ISS to HAREC, also apparently dated 19th November 2005 and referring to the fixture between ISS and HAREC as having been made on 7th November 2005 on a "back-to-back" basis. This letter from ISS makes another request for commission. The purpose of this letter is unclear: why would one principal specifically request a broker's commission from another principal ?

I) Furthermore, the commission which is requested as "25% of the total commission of 5%" is mathematically exactly the same 1¼ % which ISS mention in their other letter of the same date, being Exhibit 5, suggesting they are referring once again to what would normally be the broker's commission.

J) Exhibit 14 also apparently had attachments, being "a copy of the Broker's E-mail dated 19/11/2005 together with the draft working charter party." ISS do not name these brokers (although they might be Oceanic Shipping & Trading), nor do ISS mention what the brokers stated in their email which was apparently sent on the same date as these two letters. I have not seen these two attachments and therefore cannot comment on them. Other than to act as a cover letter for this email and a "draft working charter party", why is this letter (Exhibit 14) necessary ?

K) If there were indeed a back-to-back charter party between ISS and HAREC, why does ISS request the commission of 1¼ % which is due to a broker ?

L) If, as HAREC allege, there is a back-to-back charter party to which explicit references are made in the two letters apparently sent on 19th November 2005, why has CNAN not been sent a copy of this back-to-back charter party between ISS as disponent owner and HAREC as charterer ?

4

(M) In conclusion and based on the evidence presented thus far, I can only come to the conclusion that ISS were acting as a 'front' as agents or brokers of HAREC, who for unexplained and inexplicable reasons did not apparently wish to be a principal charterer in a charter party with CNAN.

_____
JEFFREY BLUM

### DECLARATION PURSUANT TO 28 U.S.C. § 1746

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and has been executed on this, the 9th day of July, 2008.

_____
JEFFREY BLUM

5