UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

CNAN GROUP S.P.A.,                          :          08 CV 1201 (PAC)
                                            :
                    Plaintiff,              :          ECF CASE
                                            :
    -against-                               :
                                            :
IGEN SEA SHIPPING and HASSAN ALI            :
RICE EXPORT CO.,                            :
                                            :
                    Defendants.             :
-------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW

Defendant, HASSAN ALI RICE EXPORT CO. ("HAREC") hereby submits its Reply

Memorandum of Law in further support of its Motion to Vacate Attachment obtained by the

Plaintiff, CNAN Group SpA ("CNAN").

CNAN has failed to show "reasonable grounds" required to sustain its attachment.

Although CNAN contends that it merely must meet a "prima facie" standard and contends that

this is the majority view on this district this is not conceded by HAREC.

The "reasonable grounds" standard contemplates review not only of the plaintiff's

allegations set out in the complaint, but also the evidence and arguments submitted by the

parties. Understood properly, a Court's role at a Rule E(4)(f) hearing is <u>not</u> to require that a

plaintiff to prove its claim, but it is essentially to ensure that "… their  conclusions are 'merely

holding that it is *likely'* that alleged facts are true." *See* <u>Wajilam Exports (Singapore) Pte. Ltd. v.</u>

<u>ATL Shipping Ltd.</u>, 475 F. Supp. 2d 275, 280 (S.D.N.Y. 2006) citing <u>North of England</u>

<u>Protecting and Indem. Ass'n v. M/V Nara</u>, 1999 U.S. Dist. LEXIS 22375, * (E.D. La. 1999).  As

set forth below, CNAN's allegations are inherently unlikely to be true and its attachment should be vacated.

*Industry Background and Other Disputes Involving HAREC*

CNAN's preliminary comments regarding the rice trade and unseemly characterization of HAREC as a rogue charterer intent on avoiding payment of demurrage to shipowner is wholly irrelevant to the application before this Court. The sole inquiry before this Court is whether CNAN can support its allegations that HAREC is the alter ego of Defendant IGEN SEA SHIPPING such that its maritime attachment should not be vacated. As set out in HAREC's motion and further set out herein, CNAN has failed in this respect and the attachment should be vacated.

However, and to the extent that CNAN has utilized the pleadings and papers filed in *Salam International Transport & Trading Co. PLC v. Igen Sea Shipping and Hassan Ali Rice Export Co. (06 CV 2841)* it is respectfully submitted that this Court may rely on all such papers, including the Declaration of Mr. Aziz Ashiq Ali (attached as Exhibit E to the Declaration of Keith W. Heard in Opposition to Defendant's Motion), the Reply Memorandum of Law (attached hereto as Exhibit 1) which addresses virtually the same arguments advanced by CNAN here and the decision rendered in that case by the Honorable Judge Richard M. Berman (attached hereto as Exhibit 2) in which Plaintiff's maritime attachment obtained on a virtually identical claim was vacated.

CNAN claims that Judge Berman did not have the many "facts" before him as now placed before this Court. However, these so called "facts" are nothing more than hearsay statements and conclusory allegations none of which serve to sustain CNAN's burden to

demonstrate reasonable grounds for its attachment and/or the prima facie validity of its alter ego allegations/.

Finally, CNAN's comments regarding HAREC's alleged motives, all of which are denied and, in any case are unsupported, are particularly astonishing in respect of its own longstanding documented history of failing to abide by its own commercial obligations! *See attached hereto as Exhibits 3 – 5 Verified Complaints filed in the Southern District of New York against CNAN totaling $29,489,873.11.* As the saying goes, those in glass houses .... Of course, CNAN confirms that it has likewise failed to remit payment to its charterer Igen Sea as it is disputing any liability for vessel dispatch. Thus, where it suits CNAN's purposes, it castigates parties that deny it liability and sees fit to allege alter ego without proof but shirks its own responsibility for millions of dollars of liability.

### *CNAN's Alter Ego Evidence*

CNAN relies on the Declarations of Thomas Alan Moisley, Vivek Jain, Abdul Rahman and Abdul Rahman Butt in support of its alter ego allegations against HAREC. However, all such evidence is hearsay and need not be considered by this Court upon HAREC's motion.

These declarations are not submitted by a party to this action and all are properly considered to be hearsay as defined by Federal Rules of Evidence 801 and 802, *i.e.*, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," to which there is no applicable exception. *See F.R.E. 801(c).* There is no exception to the hearsay limitation on evidence for hearings conducted under Supplemental Rule E(4)(f).

The Second Circuit Court of Appeals has held that such evidence is hearsay and, as such, is inadmissible. *See Greiner v. Wells*, 417 F.3d 305, 325 (2d Cir. 2005)("the affidavit itself is

hearsay evidence…and does not fall into a hearsay exception.") Because CNAN's Declarations and annexed documents is hearsay and does not fall within any exception thereto, it should be deemed inadmissible and not considered by the Court.

Notwithstanding the foregoing, HAREC points to the following insufficiencies in the submitted "evidence":

### Declaration of Vivek Jain

Mr. Jain is a solicitor with the London based law firm of Thomas Cooper whom act as counsel to CNAN regarding arbitration with Igen Sea. He recounts in his Declaration his various communications with Igen Sea and HAREC in support of a contention that Igen Sea's sole proprietor, Mr. Aziz Ashiq Ali, is actually employed by HAREC. However, Mr. Jain's Declaration fails to append any proof (i.e., documentation of telephone calls from telecom providers) and also admits to the fact that his native language, Hindi, is apparently different from Urdu which apparently is the prevailing language in Karachi ((this is not explained in Mr. Jain's Declaration but such presumption is required to make sense of Mr. Jain's Declaration).

Mr. Jain contends that upon his calling to Igen Sea and HAREC over the course of several occasions that he spoke with a Mr. Aziz Ashiq Ali. It is unknown what language is used by Mr. Aziz Ashiq Ali but, assuming it is Urdu instead of Hindi, there is an admitted language conflict. CNAN seeks to have the Court credit Mr. Jain's hearsay version of the alleged conversations without any basis upon which to consider Mr. Jain's proficiency in Urdu (assuming this is/was Mr. Aziz Ashiq Ali's language). On the submitted "evidence" there is no reason why this should be agreed by the Court. Further, Mr. Jain's own Declaration details that the person with whom he spoke advised he dealt with "stones" and did not at any point

Mr. Jain fails to address in his Declaration the fact that there are many individuals with the surname of Ali working at HAREC. The very name of the company "Hassan Ali" supports this fact. It is respectfully submitted that Mr. Jain's contact with the individual described in his Declaration is not the same as the Aziz Ashiq Ali, sole proprietor of Igen Sea, whom CNAN entered into a fixture for its vessel.

Finally, it is noted with some concern that CNAN apparently had no compunction in having its solicitors directly contact Igen Sea and HAREC under the false pretense that such call was regarding a "shipment of rice" as described by Mr. Jain rather than "litigation regarding a disputed matter that involved a shipment of rice." It is unknown if such communications may be permitted under the laws of different jurisdictions. While this arguably does not fall into the scope of the prohibition on attorney contact with a party known to be represented by counsel (see Code of Professional Responsibility DR 7-104(A)(1) - *during the course of the representation of a client a lawyer shall not communicate or cause another to communicate with a party the lawyer knows to be represented by a lawyer in that matter unless the lawyer has the prior consent of the lawyer representing such other party)* it is nonetheless troubling since there was no announcement made by Mr. Jain that he was a lawyer acting on behalf of a litigant. As such, and in addition to the submitted "evidence" is hearsay, the Court should refuse to consider this "evidence"

### Declaration of Abdul Rahman

CNAN relies on the Declaration of Mr. Rahman in an effort to show that Igen Sea's offices appear to him (and his clerk Mr. Shahzaman Zamrani – whose Declaration was not filed by CNAN) not to be occupied. As stated above, this Declaration is hearsay and should not be

considered by the Court. However, there are several pertinent aspects of the Declaration which should be addressed.

In the first, it is to be noted that this inspection was carried out on June 30, 2008 which is obviously several months after CNAN filed the subject maritime attachment but in which, in its Complaint, averred upon information and belief that visits to the Igen Sea office showed no evidence of "a going concern" and recounts the alleged condition of the Igen Sea building and offices. *See copy of CNAN's Verified Complaint at paragraph 19 annexed hereto at Exhibit 6.* Thus, it appears that CNAN was relying on the same evidence as had been relied upon by Salam International Transport which was found wanting by Judge Berman when he dismissed the prior attachment against HAREC.

Secondarily, the "conversations" that Mr. Rahman had with tenants of the building in which Igen Sea maintains its offices are double hearsay and as such should not be considered by this Court without an exception for allowing the same. However, since it is surely the so called truth of these statements being relied upon by CNAN no such exception can be used to save the hearsay.

Thirdly, and perhaps most importantly, CNAN fails to account for the fact that while the underlying CNAN – Igen Sea fixture was reached in November 2005 it wants this Court to consider its allegations, and so called "evidence" of Igen Sea, collected and presented in 2008 as if the same were actually established in 2005 the time at which the alleged alter ego relationship would be relevant. However, CNAN has failed to even casually address the relationship of the parties at the time the fixture was formed and, even more importantly, at the time the Igen Sea – HAREC fixture on back to back terms, save for a freight commission, was agreed. Hence,

CNAN's arguments and evidence, even if true (which is denied), are irrelevant and should be ignored.

Lastly, it should be considered that CNAN's evidence is merely a rehash of that provided by Salam International Transport, several years hence, and which should also be rejected.

### Declaration of Abdul Rahman Butt

CNAN relies on Mr. Butt's Declaration to prop up Mr. Rahman's Declaration and also lend some credence to a claim not asserted in CNAN's Verified Complaint – that under Pakistani law that Igen Sea is to be considered something called the "benami" of HAREC. Respectfully to Mr. Butt as this allegation is nowhere to be found in CNAN's Verified Complaint filed in support of its maritime attachment his comments in this respect are irrelevant.

It is also to be noted that Mr. Butt relies entirely on the hearsay Declarations of Mr. Rahman and Mr. Jain and that his own Declaration is not submitted to this Court on the penalty of perjury. As such, it is without any foundation to be considered by this Court as it does not comport with technical requirements to be considered.

### Declaration of Jeffrey Blum

CNAN relies on the Declaration of Jeffrey Blum, a shipbroker, regarding various aspects of the related charter parties at stake in this litigation. Mr. Blum concludes upon his review ("based on evidence presented thus far") that Igen Sea acted as an agent, or broker, to HAREC. He casually connects such relationship as a front. However, this "evidence" is really no different from the more detailed Declaration of Klaus C. Mordhorst (attached as Exhibit J to Declaration of Keith W. Heard) that was submitted by Salam International Transport that was found unpersuasive in an attempt to sustain a maritime attachment.

Mr. Blum's commentary fails to acknowledge the clear fact that Igen Sea received consideration for the back to back charter party with HAREC. Since Mr. Blum has zero personal knowledge of the motivations for Igen Sea and HAREC to enter into this relationship it is respectfully submitted that his conjecture that HAREC "apparently did not want to be a principal charterer in a charter party with CNAN" has not a whit of relevance. Parties obviously take up their commercial dealing and enter into contract with, or without, parties for their own rationale. Why, or why not, HAREC did not deal directly with CNAN is of no moment. It is, however, recalled that CNAN has a longstanding history of falling down on its obligations. See Exhibits 3 -5 attached hereto.

### *Issues Unaddressed by CNAN*

In its opposition to HAREC's motion to vacate CNAN has failed to comment upon the following relevant aspects of HAREC's motion:

> ➢ The fact that its principal claim for detention is not supported by the charter party it entered into with Igen Sea. (*see* Memorandum of Law in Support of Motion to Vacate at 2);

> ➢ The fact that any allegations of alter ego is belied by the fact that Igen Sea received a 1.25% freight commission and thus received consideration from HAREC although such remuneration to an alleged alter ego is wholly contradictory with such allegation;

> ➢ CNAN readily accepted payments from HAREC under the fixture although it now contends that HAREC is the alter ego of its charter party counterpart Igen Sea. CNAN should, as a matter of equity, be estopped from on the one hand accepting the benefits of such an alleged arrangement but then, on the other hand,

complaining that such alleged arrangement improperly is set up to shield HAREC from its reach. This is an inequitable position for CNAN to take and this Court is empowered to vacate the attachment "*where equity so demands*." *See* <u>Flame Maritime Ltd. v. Hassan Ali Rice Export Co.</u>, 07 Civ. 4426 (WHP), 2007 U.S. Dist. LEXIS 64470, *4 (S.D.N.Y. August 31, 2007)(<u>citing</u> <u>Aqua Stoli</u>, 460 F.3d at 444). (emphasis added) (see decision attached hereto as Exhibit 7).

➢ CNAN fails to address the factual inaccuracy in its Complaint that HAREC directly accepted communications regarding vessel operations when, in reality, all such communications were routed through brokers (*see* Memorandum of Law in Support of Motion to Vacate at 15; *see also Declaration of Abdullah Hashwani in Support of Motion to Vacate at paragraph 23*).

## CONCLUSION

For all of the foregoing reasons, CNAN's attachment should be vacated as against Hassan Ali Rice Export Company.

Dated: New York, NY
      July 18, 2008

LENNON MURPHY LENNON, LLC
Attorneys for Defendant
HASSAN ALI RICE EXPORT CO.

By: _____
Kevin J. Lennon
Anne C. LeVasseur

The Graybar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
Phone: (212) 490-6050
Fax:   (212) 490-6070

## AFFIRMATION OF SERVICE

I hereby certify that on July 18, 2008, a copy of the foregoing Reply Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

By: _____
              Kevin J. Lennon

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SALAM INTERNATIONAL TRANSPORT &          :
TRADING CO., PLC
c/o JORDAN NATIONAL LINES FOR SHIP       :      06 CV 2841 (RMB)(FM)
OPERATIONS,
                                         :

                        Plaintiff,       :

        - against -                      :

IGEN SEA SHIPPING and HASSAN ALI         :
RICE EXPORT CO.,                         :

                        Defendants.      :
-------------------------------------------------------------X


**HASSAN ALI RICE EXPORT CO.'s**
**REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF MOTION**
**TO VACATE MARITIME ATTACHMENT**


TISDALE & LENNON, LLC
11 West 42nd Street, Suite 900
New York, NY 10036
(212) 354-0025 (phone)
(212) 869-0067 (fax)

*Attorneys for Defendant*
*HASSAN ALI RICE EXPORT CO.*

Kevin J. Lennon, Esq.

## ARGUMENT

Plaintiff, Salam International Transport & Trading Co., PLC ("Salam") has utterly failed to provide any actual evidence of its so-called alter ego allegation against Defendant, Hassan Ali Rice Export Co. ("Hassan Ali"). Rather, it relies on Declarations that comment <u>not</u> on evidence showing any linkage between Hassan Ali and Igen Sea but rather on continued conjecture and unwarranted speculation as to he offices of Defendant Igen Sea Shipping ("Igen Sea"), the manner in which Hassan Ali lawfully paid for the freight due under its charter party with Igen Sea (and thus also satisfied Igen Sea's obligation to Salam) and allegedly 'unusual circumstances' involving the back to back charter parties. While Salam has submitted voluminous papers – all of which were notably absent from its ex parte application to this Court – it has failed, as it is required to preserve its attachment, to establish a likelihood of success on the alter ego claim against Hassan Ali. Thus, the ex parte Order authorizing the writ of attachment against Hassan Ali should be vacated.

Salam's attempt to shift the burden of proof on the issue of alter ego to Hassan Ali must be set aside. The rules and the caselaw regarding post-attachment hearings clearly provide that it is for the Plaintiff to show cause why the attachment should not be vacated. *See* Point I of Hassan Ali Memorandum of Law in Support of Motion to Vacate. Nevertheless, Hassan Ali has demonstrated why the attachment should be vacated and has identified the gaping lack of actual evidence submitted by Salam that could ostensibly substantiate an alter ego allegation. Certainly, Hassan Ali cannot be required to *disprove a negative*. Further, as Hassan Ali is <u>not</u> the alter ego of Igen Sea, and it has no control over Igen Sea, it should not be expected to obtain

evidence from Igen Sea. It was, however, able to obtain and submitted the brief Declaration of Mr. Ali, in which he unequivocally rejects Salam's alter ego supposition.

Salam awkwardly contends that the Second Circuit's guidance in <u>Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.</u>, 933 F.2d 131 (2d Cir. 1991), among other leading cases, is inapplicable to this proceeding because it was not an attachment case and discovery had not been afforded. This off-base contention might arguably hold some water if it were not for the inescapable fact that Hassan Ali's due process rights can only be protected by requiring Salam to lay bare its proofs on alter ego now and not some time far off in the horizon. It is noteworthy in this respect that Salam's Complaint advised the Court that London arbitration could take 3 years and thus interest for 3 years was requested and granted. See ¶13 of Salam Complaint, attached as Ex. 1 to Affidavit of Kevin J. Lennon in Support of Motion to Vacate ("Lennon Aff.") It cannot be seriously argued to the contrary that the guidance of <u>Wm. Passalacqua Builders</u>, as specifically relied upon by Judge Scheindlin in <u>Ulisses Shipping Corp. v. FAL Shipping Co.</u>, 415 F. Supp. 2d 318, 2006 U.S. Dist. LEXIS 2283 (S.D.N.Y. 2006) (Scheindlin, J.) should guide this Court's review of Salam's thin alter ego evidence.

In order to remedy any misconception that Salam's so-called evidence approaches the quantum and type of evidence offered by Plaintiff in the <u>Ulisses</u> motion to vacate we attach hereto as Exhibit 1 the Declaration of Maria Moisidou (relevant exhibits attached) submitted by plaintiff in the <u>Ulisses</u> case. Salam's alter ego allegation evidence here clearly pales in comparison.

Salam argues that the sole proprietorship status of Hassan Ali and Igen Sea renders superfluous the need to pierce the corporate veil of Hassan Ali. However, as Salam has tendered no evidence regarding the manner in which Pakistani businesses are organized, held and carry

out their business with what should be understood to be "corporate formalities" this Court has not been provided with any basis upon which to accept Salam's inane suggestion. In fact, this aspect of Salam's brief is suggestive of its desire to have the Court provide mere short shrift to Hassan Ali's due process rights to test fully Salam's alter ego allegation. Salam goes so far as to casually comment that this can "await conclusion of the London arbitration." *See* Salam Memorandum of Law at 8. The Court should not take up Salam's invitation to delay justice and no carefully review Salam's alter ego proof since doing so will very likely impermissibly tie up Hassan Ali's property for several years pending the outcome of an arbitration to which Hassan Ali is not even a party!

Incredibly, Salam seeks refuge by re-directing the attention of the Court to another matter involving Hassan Ali and Igen Sea. To make matters worse Salam comments that it is noteworthy, without saying why, that Hassan Ali used the same counsel in that case as it does here. *See* Affidavit of Julia Moore at 5. Such offhand comments suggesting some impropriety should be avoided as they are irrelevant. Salam makes a stridently incorrect assertion that Hassan Ali acted as guarantor of Igen Sea's debts in that other case. This is again simply not so. Further, there was no determination in the other matter that this was, in fact, the case since the case settled. As set out by Hassan Ali within its Motion to Vacate the attachment in the other action, the Guarantee was not as that claimed by Salam. Attached hereto as Exhibit 2 for the Court's review is Hassan Ali's Memorandum of Law and Declaration in that matter on the issue of guarantee. That Salam failed to advise the Court that Hassan Ali fully contested this aspect of that other case is telling of the weakness of its position in this case.

Salam shamelessly ruminates, without any evidentiary support, that Igen Sea existed as nothing more than a paper charterer, "*perhaps* as a chartering or brokering department" and that

it received "no financial remuneration" from its charter with Hassan Ali. Ye again, this is not so.

Rather, as the attached Declaration of Abdullah Hashwani ("Hashwani Aff.") demonstrates, Igen

Sea was paid an address commission of Pakistani Rupees 434,953.80. See Hashwani Aff. ¶4

attached hereto as Exhibit 3. Where Salam continues to unconvincingly assert that Igen Sea did

not receive such a payment, or that such a payment was bypassed (see Salam Memorandum of

Law at 7), it is flat out wrong. Further, although the Declaration of Klaus Mordhorst submitted

in support of Salam's Opposition may be illuminating as to the nature of back to charter

agreements and Mr. Mordhorst's understanding of ordinary commercial practices in the maritime

industry this of course does not prove that Igen Sea did <u>not</u> receive compensation for its charter

party with Hassan Ali. Mr. Mordhorst's complete failure to comment on the manner in which

JNLSO issued the Freight Invoice is interesting. Hassan Ali would have expected Mr.

Mordhorst to decry this as falling outside of customary business practices and being

**extraordinary and unusual**. Especially since Salam, as vessel owner, apparently never

received any freight for the charter party it entered into with Igen Sea for its vessel but rather

JNLSO received all freight. Despite this it does not appear that Salam is seeking recovery

against Igen Sea for failure to remit freight. Finally, since Mr. Mordhorst has not one iota of

personal knowledge regarding why Igen Sea entered into the charter party with Hassan Ali his

rank speculation that the same served no valid commercial purpose is significantly off base.

Salam cannot avoid the complete legitimacy of the fully disclosed back-to-back charter

party agreement between Igen Sea and Hassan Ali. It is quite interesting to note the comments

set forth in the Declaration of Captain Mazzen Baddar ("Baddar Decl.") submitted in support of

Salam's Opposition. In the first instance, Captain Baddar makes no indication of his

relationship, if any, to the Plaintiff – Salam. It is quite apparent that for all of the alter ego

speculation set forth by Salam regarding Hassan Ali it appears to be the case that Salam and Jordan National Lines for Ship Operation Ltd. ("JNLSO") are the only true alter egos in this matter. The charter party between Salam and Igen Sea listed the vessel owner as Salam c/o JNLSO. See Hashwani Aff., Ex. 2, attached to Lennon Aff. as Ex. 8. That Salam and JNLSO are alter egos is supported by the fact that the freight invoice was issued not by Salam but by JNLSO. See Ex. 1 to Baddar Decl. The listed beneficiary on JNLSO' freight invoice is JNLSO - not Salam. Outside of the original charter party between Salam and Igen Sea, it appears that Salam had no interest or involvement in the charter. It is quite possible that Salam is not even the real party in interest. Further proof that JNLSO and Salam are alter egos was revealed through a simple check on the website registry details for the websites maintained by Salam (www.sittcogroup.com) and JNLSO (www.jnslgroup.com). These details show that each website is registered to the same individual – Ahmad Armoush – with an identical address in Amman, Jordan. *See* Website registries attached hereto as Exhibit 4. Because alter ego liability is an equitable remedy, the Court should be reluctant to credit the allegations of Salam in light of this evidence of Salam and JNLSO's alter ego status.

Returning to Captain Baddar's Declaration he expresses extreme surprise to note that Hassan Ali paid for the freight invoice. Yet, he expressed no similar surprise that JNLSO – not the vessel's owner – issued the freight invoice. Further, and despite his three decades within the shipping industry, he apparently failed to make any connection that Hassan Ali, noted as the shipper of the cargo identified in the Salam – Igen Sea charter party (see Box 17 of Igen Sea – Hassan Ali charter party, Exhibit 2 to Hashwani Decl., attached to Lennon Aff. as Ex. 8) entered into a back to back charter agreement with Igen Sea and thus when it remitted the freight payment that it was satisfying not only the Igen Sea obligation to Salam (not JNLSO) but also its

6

own obligation. Surely Captain Baddar should have recognized that as shipper of the cargo identified in the head charter party Hassan Ali would be the ultimate source for vessel freight. Additionally, despite this professed 'extreme surprise' coming from Salam, or JNLSO, or both, it does not appear anywhere in the record that either Salam or JNLSO made any contemporaneous complaint to Igen Sea about the fact that the freight invoice had been paid in full. Certainly, Hassan Ali perpetrated no alter ego type fraud by *paying in full* the freight invoice.

Salam has also produced a Declaration from Sheikh Dildar Hussain in an attempt to show that Igen Sea's premises are not as that claimed by Igen Sea. However, the Affidavit of Igen Sea's sole proprietor Aziz Ashiq Ali contends otherwise. Further, Mr. Hussain's Declaration does not show that Igen Sea is <u>not</u> operating out of the indicated premises. Rather, it only shows that hearsay statements from individuals (claimed by Mr. Hussain to be "not forthcoming" but apparently open enough to advise that the Hashwani family owned the building) found at the address could neither confirm nor deny that Igen Sea operates out of the building in question. The hearsay statements of those individuals about their knowledge of Igen Sea have no probative value.

Mr. Hussain makes much out of the allegedly "dilapidated building." However, the only photographs he appends to his Declaration are of a single aspect of the outside of the building. He fails to advise of the conditions he found while inside the building and where business is presumably carried out. Further, despite the building's allegedly dilapidated condition, Mr. Hussain says he found operating business and individuals located therein. Mr. Hussain's failure to locate Igen Sea does not, *ipso facto*, mean that Igen Sea does not operate out of the building. He does not indicate how many times he visited the building, for how long he visited the building, at what time(s) of day he visited the building, etc... Finally, he concedes that Igen

7

Sea's nameplate was on the building and thus his Declaration actually offers support for the fact that Igen Sea has an office at the building. His speculation as to shutters being locked for a long time, the shop not being used for a long time, the age of Igen Sea's sign and his "impressions" are completely irrelevant as the same are nothing more than rank speculation.

In addition to the significant deficiencies identified above regarding Plaintiff's alter ego allegation, the attachment obtained at Habib Bank over Hassan Ali's property does not in any way constitute property belonging to, Igen Sea or in which it can be claimed that Igen Sea has a attachable property interest. The attachment of Hassan Ali's property must, therefore, be vacated because the property in question, is not property of Igen Sea. Rather, the funds held by garnishee Habib Bank relate to transactions between Hassan Ali and third parties in which Igen Sea has no interest.

Plaintiff has attached the following funds in this action:

|  |  |
|---|---|
| Garnishee: | Habib Bank |
| Date: | May 12, 2006 |
| Originator: | Societe Barry de Commerce |
| Beneficiary: | Hassan Ali Rice Export Co. |
| Amount: | $300,000 |

As established in the accompanying Declaration of Abdullah Hashwani[1], the inward wire remittance to Habib Bank currently restrained relates to *another* valid business transaction between Hassan Ali and a third party, not involving Igen Sea. *See* Declaration of Abdullah Hashwani attached hereto as Exhibit 5. Because Igen Sea has no property interest or control over the funds under attachment, Plaintiff cannot carry its burden of establishing probable cause for the attachment of Hassan Ali's property. *See* Continental Insur. Co. v. Adriatic Tankers Ship. Co., 1995 U.S. Dist. LEXIS 16786 (E.D. La. 1995) (defendant's degree of control and ownership of the attached property was not sufficient to rise to the level of probable cause for the seizure);

---

[1] The signed copy will be received from Pakistan overnight and filed in substitution of the unsigned version.

*see also* Eastwind Transport Ltd. v. Sutra B.V., 1997 U.S. Dist. LEXIS 19958 (E.D. La. 1997)

(despite sympathy with plaintiff's plight, the court vacated plaintiff's attachment of cargo owned

by third party as security for defendant's alleged breach of contract with plaintiff). Accordingly,

Salam's attachment against Hassan Ali should be vacated.

## CONCLUSION

Salam has not sustained its burden under the law established in the Second Circuit for

assessing alter ego liability. *See* Molozanov v. Quantum Telecom Ltd., 2006 U.S. Dist. LEXIS

16788, *12-13 (S.D.N.Y. 2006) (Buchwald, J.); House v. Kent Worldwide Machine Works, Inc.,

2005 U.S. Dist. LEXIS 2810, *12 (S.D.N.Y. 2005) (Berman, J). Consequently, its Rule B

attachment as against Hassan Ali should be vacated.

Dated: New York, NY
      May 18, 2006

                TISDALE & LENNON, LLC
                Attorneys for Defendant
                HASSAN ALI RICE EXPORT CO.

By:                       
                KEVIN J. LENNON (KL – 5072)

                11 West 42nd Street, Suite 900
                New York, NY 10036
                (212) 354-0025 – phone
                (212) 869-0067 – facsimile

TO:   Nourse & Bowles, LLP
       Attorneys for Plaintiff
       SALAM INTERNATIONAL TRADING
        & TRANSPORT CO., PLC
       One Exchange Plaza
       At 55 Broadway
       New York, NY 10006-3030
       Attn:   John P. Vayda, Esq.
               Julia M. Moore, Esq.

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

SALAM INTERNATIONAL TRANSPORT &
TRADING CO., PLC
c/o JORDAN NATIONAL LINES FOR SHIP
OPERATIONS,

        Plaintiff,

   - against -

IGEN SEA SHIPPING AND HASSAN ALI,
RICE EXPORT CO.,

        Defendants.

-------------------------------------------------------------x

    :
    :
    :
    :
    :
    :
    :
    :
    :
    :
    :
    :
    :

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 25, 06

06 Civ. 2841 (RMB)

**ORDER**

I.  **Background**

  On or about April 12, 2006, Salam International Transport & Trading Co. ("Salam" or

"Plaintiff") filed a verified complaint against Igen Sea Shipping ("Igen Sea") and Hassan Ali Rice

Export Co. ("Hassan Ali," together, "Defendants") alleging that Igen Sea failed to pay $249,517.42

due to Plaintiff under a voyage charter party agreement, dated November 12, 2005 (the "Charter").

(See Verified Complaint, dated April 11, 2006 ("Verified Complaint"), at ¶ 5.)  Plaintiff alleges that

Defendant Hassan Ali "was the alter ego of Igen Sea Shipping."  (See Verified Complaint at ¶ 4.)

On or about April 13, 2006, the Court issued an Ex Parte Order for Process of Maritime Attachment

and Garnishment against Igen Sea and Hassan Ali (the "Attachment").  On or about May 10, 2006,

Plaintiff attached Defendant Hassan Ali's property valued at $249,517.42 by serving non-party

garnishee Habib Bank with a copy of the Attachment.

  On May 15, 2006, Defendant Hassan Ali moved to vacate the Attachment ("Motion to

Vacate") contending that Plaintiff's alter ego allegations are "woefully insufficient."  (See

Memorandum of Law in Support of Motion to Vacate Maritime Attachment, dated May 15, 2006

("Def. Mem." or "Hassan Ali's Memorandum of Law"), at 2, 5.)  Plaintiff filed an opposition on

May 17, 2006, arguing that Plaintiff "had reasonable grounds for its belief that Igen and Hassan Ali

were alter egos of each other," because, among other things, Igen Sea "was a 'paper' charterer used

to improperly insulate sub-charter Hassan Ali from damages."  (See Memorandum of Law in

Opposition to Motion to Vacate Attachment, dated May 17, 2006 ("Pl. Mem." or "Plaintiff's

Memorandum of Law"), at 2.)  Defendant Hassan Ali filed a reply on May 18, 2006, stating that

Plaintiff's opposition "relies on Declarations that comment not on evidence showing any linkage

between Hassan Ali and Igen Sea but rather on continued conjecture and unwarranted speculation."

(See Reply Memorandum in Further Support of Motion to Vacate Maritime Attachment, dated May

18, 2006 ("Def. Reply" or "Hassan Ali's Reply Memorandum of Law"), at 2.)

     The Court heard oral argument on May 22, 2006 at which the parties agreed there was no

need for a further hearing.  (See Transcript of Oral Argument, dated May 22, 2006.)

     **For the reasons set forth below, Defendant Hassan Ali's Motion to Vacate is granted.**

**II.**    **Legal Standard**

     "Under Supplemental Rule B an order of maritime attachment must issue upon a minimal

prima facie showing provided the defendant cannot be 'found within' the federal district in which

the assets are sought to be attached." Ullises Shipping Corp. v. FAL Shipping Co. Ltd., 415 F.

Supp. 2d 318, 322 (S.D.N.Y. 2006).  Under Supplemental Rule E(4)(f), "any person claiming an

interest in [the attached property] shall be entitled to a prompt hearing at which the plaintiff shall be

required to show why the . . . attachment should not be vacated or other relief granted consistent

with these rules." Fed. R. Civ. P. Supp. R. B(1) (2006); see Seaplus Line Co. Ltd. v. Bulkhandling

Handymax AS, 409 F.Supp.2d 316, 319 (S.D.N.Y. 2005) ("It is clear from the text of [Rule E(4)(f)]

that the party . . . having obtained the maritime attachment bears the burden of showing that the

attachment should not be vacated.").  "The post-arrest hearing is not intended to resolve definitively

the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant." Ullises Shipping, 415 F.Supp.2d at 322 (internal citations omitted); see Thypin Steel Co. v. Certain Bills of Lading, No. 96 Civ. 2166, 1996 WL 223896, at *4 (S.D.N.Y. May 2, 1996) ("The language of the Rule and the case law decided thereunder therefore support [the] contention that [plaintiff's] burden at the post-arrest hearing stage is to produce evidence sufficient to show that the arrest was supported by reasonable grounds.").

Federal courts, sitting in admiralty, allow "piercing of the corporate veil where (1) a corporation uses its alter ego to perpetrate a fraud or (2) where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own." Status Intern. S.A. v. M & D Mar. Ltd., 994 F. Supp. 182, 186 (S.D.N.Y. 1998). "At a post-attachment hearing, a plaintiff asserting corporate alter egos need not definitively establish domination and control, but must present enough evidence to convince the court that there are reasonable grounds for piercing the corporate veil." Ullises Shipping, 415 F. Supp. 2d at 323.

## III. Analysis

Having reviewed the record in this case, including, among other things, Defendant Hassan Ali's Memorandum of Law and the accompanying affidavit of Kevin J. Lennon, dated May 15, 2006; Plaintiff's Memorandum of Law, the accompanying affidavit of Julia M. Moore, dated May 17, 2006, and the declarations of Sheikh Dildar Hussain, dated May 16, 2006 ("Hussain Decl."), Captain Mazen Baddar, dated May 17, 2006, and Klaus C.J. Mordhorst, dated May 17, 2006 ("Mordhorst Decl."); Defendant Hassan Ali's Reply Memorandum of Law and the accompanying declarations of Abdullah Haswani, dated May 19, 2006, and Aziz Ashiq Ali, dated May 19, 2006; Plaintiff's supplemental declarations from Muhammad Shaiq Usmani, dated May 22, 2006, and Captain Mazen Baddar, dated May 21, 2006; and the applicable law, the Court finds that Plaintiff

has not presented enough evidence of reasonable grounds for piercing the corporate veil.[1] <u>Ulliscs</u>

<u>Shipping</u>, 415 F.Supp.2d at 323. Among other things, there is no evidence that Hassan Ali used

Igen Sea for a fraudulent purpose and insufficient evidence (i.e. no reasonable grounds to believe)

that Hassan Ali is Igen Sea's alter ego. For example, there is no evidence that Igen Sea lacks the

"formalities and paraphernalia that are part and parcel of the corporate existence;" no evidence of

"inadequate capitalization;" and no evidence that there was any "overlap in ownership, officers,

directors, and personnel" between Igen Sea and Hassan Ali. <u>Wm. Passalacqua Builders, Inc. v.</u>

<u>Resnick Developers S., Inc.</u>, 933 F.2d 131, 139 (2d Cir. 1991); <u>see</u> <u>De Jesus v. Sears, Roebuck &</u>

<u>Co., Inc.</u>, 87 F.3d 65, 70 (2d Cir. 1996) ("To overcome the 'presumption of separateness' afforded

to related corporations, Plaintiffs must come forward with the showing of actual domination

required to pierce the corporate veil.") (internal citations omitted); <u>American Protein Corp. v. AB</u>

<u>Volvo</u>, 844 F.2d 56, 60 (2d Cir. 1988) ("A corporation is an entity that is created by law and

endowed with a separate and distinct existence from that of its owners. Because a principal purpose

for organizing a corporation is to permit its owners to limit their liability, there is a presumption of

separateness between a corporation and its owners which is entitled to substantial weight.")

(internal citations omitted).

Plaintiff offers only conclusory allegations that Hassan Ali is Igen Sea's alter ego. (<u>See,</u>

<u>e.g.</u>, Verified Complaint ¶ 4 ("Upon information and belief, at all material times, Defendant,

[Hassan Ali] was the alter ego of Igen Sea Shipping"); Moore Aff. ¶ ("At the time that [Plaintiff]

sought the Order of Attachment, it was in possession of information which indicated that the

relationship between Hassan Ali and Igen Sea was not arms length, that Igen Sea was not operating

as a true independent entity, and may have been functioning as a chartering department of Hassan

Ali . . . ."); Hussain Decl. ¶ 1 ("The building structure in the vicinity of [Hassan Ali's] shop was

---

[1]     The Court expresses no view upon the ultimate merits of Plaintiff's claims.

4

exceedingly dilapidated and it would appear that this shop has not been used for a long time.");

Mordhorst Decl. ¶ 6 ("To my mind, there is no valid business purpose for Igen Sea to accept such

risks without real compensation.").)

## IV.   Conclusion and Order

For the reasons stated herein, Defendant Hassan Ali's Motion to Vacate [#7] is granted.


Dated: New York, New York
       May 25, 2006

_____
**Richard M. Berman, U.S.D.J.**

# EXHIBIT 3

JUDGE SWAIN

08 CIV 4044

48-08/PJG

FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski (PG 2200)
Gina M. Venezia (GV 1551)



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WEALCAN ENTERPRISES INC.,

        Plaintiff

  -against-

CNAN GROUP SpA
and CNAN MAGHREB LINES,

        Defendants.

---

08 Civ. _____ (   )

**VERIFIED COMPLAINT**

Plaintiff Wealcan Enterprises Inc. (hereinafter "Wealcan"), for its Verified Complaint against Defendants CNAN Group SpA (hereinafter "CNAN Group") and CNAN Maghreb Lines (hereinafter "CNAN Maghreb") (hereinafter collectively "Defendants" or "CNAN") alleges upon information and belief as follows:

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract of charter party. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333 and the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331 in that the action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

2.     At all times material hereto, Plaintiff Wealcan was and still is a business entity duly organized and existing under the laws of a foreign country with an address at Calle 50, No. 102, Planta Baja, Panama.

3.     At all times relevant hereto, Defendant CNAN Group was and still is a foreign business entity organized and existing under the laws of a foreign country with an address at 2, Quai No 9, Nouvelle Gare Maritime, Alger Port, 16100, Algiers, Algeria.

4.     At all times relevant hereto, Defendant CNAN Maghreb was and still is a foreign business entity organized and existing under the laws of a foreign country with an address at 74 Boulevard Mohamed V, Alger, Algeria.

5.     On or about January 9, 2004, Plaintiff Wealcan, in the capacity as owner of the M/V MILLENIUM EXPRESS, entered into a maritime contract of charter party with CNAN Group for a period of 12 months which was extended up to June 14, 2007. A copy of the Liner Deep Sea Time Charter dated January 9, 2004, with addenda, is attached as Exhibit A.

6.     In connection with the London proceedings (discussed below), Defendant CNAN Maghreb has asserted that it too is a party to the subject charter party by virtue of Addendum No. 3.[1]

7.     The vessel was duly tendered to Defendants, and Plaintiff Wealcan performed as required under the charter party.

8.     Following the redelivery of the vessel, Plaintiff Wealcan submitted its final hire statement to Defendants showing a balance due in Plaintiff's favor in the amount of $637,516.10 plus an additional amount for the cost of ramps in the amount of EUR350,000 (US $514,500). A copy of Plaintiff Wealcan's hire statement is attached as Exhibit B.

---

[1] Plaintiff disagrees with Defendants' position, but to the extent that Defendants are correct, then Defendant CNAN Maghreb is properly named a defendant herein.

9.    In breach of the terms of the charter party, and despite due demand, Defendants CNAN have refused or otherwise failed to pay the amount due and outstanding and the amount of $1,152,016.10 remains due and owing.

10.    The charter party provides for the application of English law and any dispute arising thereunder is to be referred to arbitration at London, and Wealcan specifically reserves its right to arbitrate the substantive matters at issue.    Arbitration has been commenced and is proceeding.

11.    This action is brought to obtain security in favor of Plaintiff Wealcan in respect to its claims against Defendants CNAN and in aid of London arbitration.

12.    Under English law, including but not limited to Section 63 of the English Arbitration Act of 1996, costs including attorneys' fees, arbitrators' fees, disbursements and interest are recoverable as part of Plaintiff's claim.

13.    This action is further brought to obtain security for the additional sums which are recoverable including Plaintiff's anticipated attorneys' and arbitrators' fees and costs in the London arbitration and interest, all of which are recoverable as part of Plaintiff's claim under English law.

14.    Plaintiff estimates, as nearly as can be computed, that the legal expenses and costs of prosecuting the claim in London arbitration will be $300,000, and interest on its damages are estimated to be $266,000 (calculated at the rate of 7% for a period of 3 years (compounded quarterly), the estimated time for completion of the proceedings in London) including any appeal of any arbitration award issued.

**Request for Rule B Relief**

15.    Upon information and belief, and after investigation, Defendants cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendants have, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendants CNAN Group SpA and CNAN Maghreb LINES (collectively hereinafter, "ASSETS"), including but not limited to ASSETS as may be held, received or transferred in their own names or as may be held, received or transferred for their benefit, at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein.

16.    The total amount to be attached pursuant to the calculations set forth above is $1,718,016.10.

WHEREFORE, Plaintiff Wealcan Enterprises Inc. prays:

a.    That process in due form of law according to the practice of this Court may issue against Defendants citing them to appear and answer the foregoing;

b.    That if Defendants cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendants up to and including $1,718,016.10 be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter

hire, of, belonging to, due or being transferred from or for the benefit of Defendants (collectively hereinafter, "ASSETS"), including but not limited to such ASSETS as may be held, received, or transferred in their own name or as may be held, received or transferred for their benefit, at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c.    That this Court retain jurisdiction over the matter for any subsequent enforcement action as may be necessary; and

d.    For such other, further and different relief, as the Court may deem just and proper in the premises.

DATED:    New York, New York
         April 29, 2008

Respectfully submitted,

Peter J. Gutowski (PG 2200)
Gina M. Venezia (GV 1551)
FREEHILL HOGAN & MAHAR LLP
80 Pine Street
New York, New York 10005
Tel: (212) 425-1900 / Fax: (212) 425-1901
*Attorneys for Plaintiff*

## **ATTORNEY VERIFICATION**

State of New York    )
                    ) ss.:
County of New York  )

      GINA M. VENEZIA, being duly sworn, deposes and says as follows:

      1.    I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

      2.    The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

      3.    The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
Gina M. Venezia

Sworn to before me this
29th day of April, 2008

_____
Notary Public

**HAZEL S. ROSENTHAL**
Notary Public, State of New York
No. 01RO4641176
Qualified in Queens County
Certified in New York County
Commission Expires Dec. 31, 2010

# EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GREAT HOPE SHIPPING COMPANY,                      :

                        Plaintiff,                :

        - against -                               :

SNTM CNAN a/k/a SICIETE NATIONALE DE              :
TRANSPORTS MARITIMES, SOCIETE
NATIONALE DE TRANSPORTES MARITIMES,               :
CNAN GROUP SPA or COMPAGNIE
NATIONALE DE NAVIGATION,                          :

                        Defendant.                :
-------------------------------------------------------------X



## VERIFIED COMPLAINT

Plaintiff, GREAT HOPE SHIPPING COMPANY (hereinafter referred to as Plaintiff or

"Great Hope"), by and through its attorneys, Tisdale & Lennon, LLC, as and for its Verified

Complaint against the Defendant SNTM CNAN a/k/a SOCIETE NATIONALE DE

TRANSPORTES MARITIMES, SICIETE NATIONALE DE TRANSPORTS MARITIMES,

CNAN GROUP SPA or COMPAGNIE NATIONALE DE NAVIGATION (hereinafter referred

to as Defendant or "CNAN"), alleges, upon information and belief, as follows:

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333.

2.      At all times material to this action, Plaintiff was, and still is, a foreign company

duly organized and existing under the laws of Marshall Islands.

3.      Upon information and belief, Defendant CNAN was, and still is, a foreign

corporation or other business entity organized under and existing by virtue of foreign law.

## AS AND FOR THE FIRST CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF AGAINST DEFENDANT

4.    Paragraphs One through Three are hereby incorporated as Paragraphs Four

through Six and made part hereof as if more fully set forth herein.

7.    Plaintiff was at all material times the Owner of the motor vessel "SUMY."

8.    Defendant CNAN was at all material times the Charterer of the M/V "SUMY."

9.    By a charter party dated October 14, 2003, Plaintiff chartered the M/V "SUMY"

to Defendant.

10.    Certain disputes arose between Plaintiff and Defendant regarding Defendant's

failure to pay freight due and owing under the charter party.

11.    As a result of Defendant's failure to pay the amounts due under the charter party,

Plaintiff has and will continue to suffer losses in the total principal sum of $74,706.08, as best

can now be estimated, exclusive of interest, reasonable attorneys fees and arbitration expenses.

12.    Pursuant to clause 56 of the charter party, all disputes arising thereunder are to be

submitted to arbitration in London with English law to apply.

13.    Despite due demand, Defendant failed to pay the amounts due and owing under

the charter party.  As a result, Plaintiff has or will soon commence arbitration proceedings on its

claims.

14.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party

under English law.  As best as can now be estimated, Plaintiff expects to recover the following

amounts under the final arbitration award:

A.    Principal claim:                         $74,000.00

| | | | |
|---|---|---|---|
| B. | Estimated interest on principal claim; Approx. 4 years at 6%, compounded quarterly: | | $22,868.01 |
| C. | Attorney's fees and arbitration expenses: | | $35,000.00 |
| **Total** | | | **$132,274.09** |

15.    The Defendant cannot be found within this District within the meaning of Rule B

of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of

Civil Procedure, but, upon information and belief, Defendant has, or will have during the

pendency of this action, assets within this District and subject to the jurisdiction of this Court,

held in the hands of garnishees including, but not limited to, American Express Bank, ABN-

AMRO Bank, Bank of America, Bank of New York, Deutsche Bank, Citibank, HSBC (USA)

Bank, JP Morgan Chase, Standard Chartered Bank, and/or Wachovia Bank which are believed to

be due and owing to the Defendant.

16.    The Plaintiff seeks an order from this court directing the Clerk of Court to

issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental

Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States

Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant, held by

the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendant,

and to secure the Plaintiff's claims as described above.

## AS AND FOR THE SECOND CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF AGAINST DEFENDANT

17.    Paragraphs One through Three and Fifteen through Sixteen are hereby

incorporated as Paragraphs Seventeen through Twenty-One and made part hereof as if more fully

set forth herein.

22.    Plaintiff was at all material times the Owner of the motor vessel "HALIS KALKAVAN."

23.    Defendant was at all material times the Charterer of the M/V "HALIS KALKAVAN."

24.    By a charter party dated July 15, 2003, Plaintiff chartered the M/V "HALIS KALKAVAN" to Defendant.

25.    Certain disputes arose between Plaintiff and Defendant regarding Defendant's failure to pay freight due and owing under the charter party.

26.    As a result of Defendant's failure to pay the amounts due under the charter party, Plaintiff has and will continue to suffer losses in the total principal sum of $19,627.64, as best can now be estimated, exclusive of interest, reasonable attorneys fees and arbitration expenses.

27.    Pursuant to clause 56 of the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

28.    Despite due demand, Defendant failed to pay the amounts due and owing under the charter party.  As a result, Plaintiff has or will soon commence arbitration proceedings on its claims.

29.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law.  As best as can now be estimated, Plaintiff expects to recover the following amounts under the final arbitration award:

|   |   |   |
|---|---|---|
| A. | Principal claim: | $19,627.64 |
| B. | Estimated interest on principal claim; Approx. 4 years at 6%, compounded quarterly: | $6,417.27 |
| C. | Attorney's fees and arbitration expenses: | $25,000.00 |
| **Total** | | **$51,044.91** |

4

## AS AND FOR THE THIRD CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF AGAINST DEFENDANT

30.    Paragraphs One through Three and Fifteen through Sixteen are hereby incorporated as Paragraphs Thirty through Thirty Four and made part hereof as if more fully set forth herein.

35.    Plaintiff was at all material times the Owner of the motor vessel "DS SPLENDOUR."

36.    Defendant was at all material times the Charterer of the M/V "DS SPLENDOUR."

37.    By a charter party dated December 11, 2002, Plaintiff chartered the M/V "DS SPLENDOUR" to Defendant.

38.    Certain disputes arose between Plaintiff and Defendant regarding Defendant's failure to pay freight and demurrage due and owing under the charter party.

39.    As a result of Defendant's failure to pay the amounts due under the charter party, Plaintiff has and will continue to suffer losses in the total principal sum of $81,411.16, as best can now be estimated, exclusive of interest, reasonable attorneys fees and arbitration expenses.

40.    Pursuant to clause 56 of the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

41.    Despite due demand, Defendant failed to pay the amounts due and owing under the charter party. As a result, Plaintiff has or will soon commence arbitration proceedings on its claims.

42.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law. As best as can now be estimated, Plaintiff expects to recover the following amounts under the final arbitration award:

| | | |
|---|---|---|
| A. | Principal claim: | $81,411.16 |
| B. | Estimated interest on principal claim;<br>Approx. 4 years at 6%, compounded quarterly: | $29,882.60 |
| C. | Attorney's fees and arbitration expenses: | $40,000.00 |
| **Total** | | **$151,293.76** |

## AS AND FOR THE FOURTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF AGAINST DEFENDANT

43.     Paragraphs One through Three and Fifteen through Sixteen are hereby incorporated as Paragraphs Forty Three through Forty Seven and made part hereof as if more fully set forth herein.

48.     Plaintiff was at all material times the Owner of the motor vessel "EXPRESS PHAETHON."

49.     Defendant was at all material times the Charterer of the M/V "EXPRESS PHAETHON."

50.     By a charter party dated December 11, 2002, Plaintiff chartered the M/V "EXPRESS PHAETHON" to Defendant.

51.     Certain disputes arose between Plaintiff and Defendant regarding Defendant's failure to pay freight due and owing under the charter party.

52.     As a result of Defendant's failure to pay the amounts due under the charter party, Plaintiff has and will continue to suffer losses in the total principal sum of $28,294.74, as best can now be estimated, exclusive of interest, reasonable attorneys fees and arbitration expenses.

53.    Pursuant to clause 56 of the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

54.    Despite due demand, Defendant failed to pay the amounts due and owing under the charter party. As a result, Plaintiff has or will soon commence arbitration proceedings on its claims.

55.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law. As best as can now be estimated, Plaintiff expects to recover the following amounts under the final arbitration award:

| | | | |
|---|---|---|---|
| A. | Principal claim: | | $28,294.74 |
| B. | Estimated interest on principal claim; Approx. 4 years at 6%, compounded quarterly: | | $9,250.99 |
| C. | Attorney's fees and arbitration expenses: | | $35,000.00 |
| **Total** | | | **$72,545.73** |

## AS AND FOR THE FIFTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF AGAINST DEFENDANT

56.    Paragraphs One through Three and Fifteen through Sixteen are hereby incorporated as Paragraphs Fifty-Six through Sixty and made part hereof as if more fully set forth herein.

61.    Plaintiff was at all material times the Owner of the motor vessel "YORK CASTLE."

62.    Defendant was at all material times the Charterer of the M/V "YORK CASTLE."

63.    By a charter party dated December 9, 2002, Plaintiff chartered the M/V "YORK CASTLE" to Defendant.

64.    Certain disputes arose between Plaintiff and Defendant regarding Defendant's failure to pay freight and demurrage due and owing under the charter party.

65.    As a result of Defendant's failure to pay the amounts due under the charter party, Plaintiff has and will continue to suffer losses in the total principal sum of $76,099.58, as best can now be estimated, exclusive of interest, reasonable attorneys fees and arbitration expenses.

66.    Pursuant to clause 56 of the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

67.    Despite due demand, Defendant failed to pay the amounts due and owing under the charter party. As a result, Plaintiff has or will soon commence arbitration proceedings on its claims.

68.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law. As best as can now be estimated, Plaintiff expects to recover the following amounts under the final arbitration award:

| | | |
|---|---|---|
| A. | Principal claim: | $76,099.58 |
| B. | Estimated interest on principal claim;<br>Approx. 4 years at 6%, compounded quarterly: | $24,880.81 |
| C. | Attorney's fees and arbitration expenses: | $35,000.00 |
| **Total** | | **$135,980.39** |

### AS AND FOR THE SIXTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF AGAINST DEFENDANT

69.    Paragraphs One through Three and Fifteen through Sixteen are hereby incorporated as Paragraphs Sixty-Nine through Seventy-Three and made part hereof as if more fully set forth herein.

74.    Plaintiff was at all material times the Owner of the motor vessel "ZENOVIA."

8

75. Defendant was at all material times the Charterer of the M/V "ZENOVIA."

76. By a charter party dated December 9, 2002, Plaintiff chartered the M/V "ZENOVIA" to Defendant.

77. Certain disputes arose between Plaintiff and Defendant regarding Defendant's failure to pay freight, demurrage, detention and other expenses due and owing under the charter party.

78. As a result of Defendant's failure to pay the amounts due under the charter party, Plaintiff has and will continue to suffer losses in the total principal sum of $259,734.36, as best can now be estimated, exclusive of interest, reasonable attorneys fees and arbitration expenses.

79. Pursuant to clause 56 of the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

80. Despite due demand, Defendant failed to pay the amounts due and owing under the charter party. As a result, Plaintiff has or will soon commence arbitration proceedings on its claims.

81. Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law. As best as can now be estimated, Plaintiff expects to recover the following amounts under the final arbitration award:

| | | |
|---|---|---|
| A. | Principal claim: | $259,734.36 |
| B. | Estimated interest on principal claim; Approx. 4 years at 6%, compounded quarterly: | $84,920.34 |
| C. | Attorney's fees and arbitration expenses: | $50,000.00 |
| **Total** | | **$394,654.70** |

### AS AND FOR THE SEVENTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF AGAINST DEFENDANT

82.     Paragraphs One through Three and Fifteen through Sixteen are hereby incorporated as Paragraphs Eighty-Two through Eighty-Six and made part hereof as if more fully set forth herein.

87.     Plaintiff was at all material times the Owner of the motor vessel "FRIEDRICH OLDENDORFF."

88.     Defendant was at all material times the Charterer of the M/V "FRIEDRICH OLDENDORFF."

89.     By a charter party dated February 25, 2003, Plaintiff chartered the M/V "FRIEDRICH OLDENDORFF" to Defendant.

90.     Certain disputes arose between Plaintiff and Defendant regarding Defendant's failure to pay freight due and owing under the charter party.

91.     As a result of Defendant's failure to pay the amounts due under the charter party, Plaintiff has and will continue to suffer losses in the total principal sum of $31,843.21, as best can now be estimated, exclusive of interest, reasonable attorneys fees and arbitration expenses.

92.     Pursuant to clause 56 of the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

93.     Despite due demand, Defendant failed to pay the amounts due and owing under the charter party. As a result, Plaintiff has or will soon commence arbitration proceedings on its claims.

94.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law. As best as can now be estimated, Plaintiff expects to recover the following amounts under the final arbitration award:

| A. | Principal claim: | $31,843.21 |
| B. | Estimated interest on principal claim; Approx. 4 years at 6%, compounded quarterly: | $10,411.16 |
| C. | Attorney's fees and arbitration expenses: | $35,000.00 |
| **Total** | | **$77,254.37** |

## AS AND FOR THE EIGHTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF AGAINST DEFENDANT

95. Paragraphs One through Three and Fifteen through Sixteen are hereby incorporated as Paragraphs Ninety-Five through Ninety-Nine and made part hereof as if more fully set forth herein.

100. Plaintiff was at all material times the Owner of the motor vessel "JIN SHAN HAI."

101. Defendant was at all material times the Charterer of the M/V "JIN SHAN HAI."

102. By a charter party dated September 30, 2003, Plaintiff chartered the M/V "JIN SHAN HAI" to Defendant.

103. Certain disputes arose between Plaintiff and Defendant regarding Defendant's failure to pay freight and demurrage due and owing under the charter party.

104. As a result of Defendant's failure to pay the amounts due under the charter party, Plaintiff has and will continue to suffer losses in the total principal sum of $98,050.24, as best can now be estimated, exclusive of interest, reasonable attorneys fees and arbitration expenses.

105. Pursuant to clause 56 of the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

106.    Despite due demand, Defendant failed to pay the amounts due and owing under the charter party. As a result, Plaintiff has or will soon commence arbitration proceedings on its claims.

107.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law. As best as can now be estimated, Plaintiff expects to recover the following amounts under the final arbitration award:

| | | | |
|---|---|---|---|
| A. | Principal claim: | | $98,050.24 |
| B. | Estimated interest on principal claim;<br>Approx. 4 years at 6%, compounded quarterly: | | $30,134.82 |
| C. | Attorney's fees and arbitration expenses: | | $50,000.00 |
| **Total** | | | **$178,185.06** |

## AS AND FOR THE NINTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF AGAINST DEFENDANT

108.    Paragraphs One through Three and Fifteen through Sixteen are hereby incorporated as Paragraphs One Hundred Eight through One Hundred Twelve and made part hereof as if more fully set forth herein.

113.    Plaintiff was at all material times the Owner of the motor vessel "ALTAMONTE."

114.    Defendant was at all material times the Charterer of the M/V "ALTAMONTE."

115.    By a charter party dated August 30, 2003, Plaintiff chartered the M/V "ALTAMONTE" to Defendant.

116.    Certain disputes arose between Plaintiff and Defendant regarding Defendant's failure to pay freight and demurrage due and owing under the charter party.

117.   As a result of Defendant's failure to pay the amounts due under the charter party, Plaintiff has and will continue to suffer losses in the total principal sum of $36,198.84, as best can now be estimated, exclusive of interest, reasonable attorneys fees and arbitration expenses.

118.   Pursuant to clause 56 of the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

119.   Despite due demand, Defendant failed to pay the amounts due and owing under the charter party. As a result, Plaintiff has or will soon commence arbitration proceedings on its claims.

120.   Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law. As best as can now be estimated, Plaintiff expects to recover the following amounts under the final arbitration award:

| | | |
|---|---|---|
| A. | Principal claim: | $36,198.84 |
| B. | Estimated interest on principal claim; Approx. 4 years at 6%, compounded quarterly: | $11,835.24 |
| C. | Attorney's fees and arbitration expenses: | $35,000.00 |
| **Total** | | **$83,034.08** |

## AS AND FOR THE TENTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF AGAINST DEFENDANT

121.   Paragraphs One through Three and Fifteen through Sixteen are hereby incorporated as Paragraphs One Hundred Twenty One through One Hundred Twenty Five and made part hereof as if more fully set forth herein.

126.   Plaintiff was at all material times the Owner of the motor vessel "SEA MASTER."

127.   Defendant was at all material times the Charterer of the M/V "SEA MASTER."

13

128.    By a charter party dated May 7, 2003, Plaintiff chartered the M/V "SEA MASTER" to Defendant.

129.    Certain disputes arose between Plaintiff and Defendant regarding Defendant's failure to pay freight and demurrage due and owing under the charter party.

130.    As a result of Defendant's failure to pay the amounts due under the charter party, Plaintiff has and will continue to suffer losses in the total principal sum of $112,355.13, as best can now be estimated, exclusive of interest, reasonable attorneys fees and arbitration expenses.

131.    Pursuant to clause 56 of the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

132.    Despite due demand, Defendant failed to pay the amounts due and owing under the charter party. As a result, Plaintiff has or will soon commence arbitration proceedings on its claims.

133.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law. As best as can now be estimated, Plaintiff expects to recover the following amounts under the final arbitration award:

| | | |
|---|---|---|
| A. | Principal claim: | $112,355.13 |
| B. | Estimated interest on principal claim; Approx. 4 years at 6%, compounded quarterly: | $36,734.59 |
| C. | Attorney's fees and arbitration expenses: | $50,000.00 |
| **Total** | | **$199,089.72** |

## AS AND FOR THE ELEVENTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF AGAINST DEFENDANT

134.    Paragraphs One through Three and Fifteen through Sixteen are hereby

incorporated as Paragraphs One Hundred Thirty Four through One Hundred Thirty Eight and

made part hereof as if more fully set forth herein.

139.    Plaintiff was at all material times the Owner of the motor vessel "MOOR

LAKER."

140.    Defendant was at all material times the Charterer of the M/V "MOOR LAKER."

141.    By a charter party dated August 14, 2002, Plaintiff chartered the M/V "MOOR

LAKER" to Defendant.

142.    Certain disputes arose between Plaintiff and Defendant regarding Defendant's

failure to pay freight due and owing under the charter party.

143.    As a result of Defendant's failure to pay the amounts due under the charter party,

Plaintiff has and will continue to suffer losses in the total principal sum of $13,297.78, as best

can now be estimated, exclusive of interest, reasonable attorneys fees and arbitration expenses.

144.    Pursuant to clause 56 of the charter party, all disputes arising thereunder are to be

submitted to arbitration in London with English law to apply.

145.    Despite due demand, Defendant failed to pay the amounts due and owing under

the charter party. As a result, Plaintiff has or will soon commence arbitration proceedings on its

claims.

146.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party

under English law. As best as can now be estimated, Plaintiff expects to recover the following

amounts under the final arbitration award:

|   |   |   |
|---|---|---|
| A. | Principal claim: | $13,297.78 |
| B. | Estimated interest on principal claim; Approx. 4 years at 6%, compounded quarterly: | $5,430.51 |
| C. | Attorney's fees and arbitration expenses: | $20,000.00 |
| **Total** | | **$38,728.29** |

## AS AND FOR THE TWELFTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF AGAINST DEFENDANT

147.    Paragraphs One through Three and Fifteen through Sixteen are hereby incorporated as Paragraphs One Hundred Forty Seven through One Hundred Fifty One and made part hereof as if more fully set forth herein.

152.    Plaintiff was at all material times the Owner of the motor vessel "CASHIN."

153.    Defendant was at all material times the Charterer of the M/V "CASHIN."

154.    By a charter party dated August 14, 2002, Plaintiff chartered the M/V "CASHIN" to Defendant.

155.    Certain disputes arose between Plaintiff and Defendant regarding Defendant's failure to pay freight and other expenses including the war risk premium due and owing under the charter party.

156.    As a result of Defendant's failure to pay the amounts due under the charter party, Plaintiff has and will continue to suffer losses in the total principal sum of $1,491.09, as best can now be estimated, exclusive of interest, reasonable attorneys fees and arbitration expenses.

157.    Pursuant to clause 56 of the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

158.    Despite due demand, Defendant failed to pay the amounts due and owing under

the charter party. As a result, Plaintiff has or will soon commence arbitration proceedings on its

claims.

159.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party

under English law. As best as can now be estimated, Plaintiff expects to recover the following

amounts under the final arbitration award:

|   |   |   |
|---|---|---|
| A. | Principal claim: | $1,491.09 |
| B. | Attorney's fees and arbitration expenses: | $3,800.00 |

**Total**                                                                                    **$5,291.09**

### AS AND FOR THE THIRTEENTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF AGAINST DEFENDANT

160.    Paragraphs One through Three and Fifteen through Sixteen are hereby

incorporated as Paragraphs One Hundred Sixty through One Hundred Sixty Four and made part

hereof as if more fully set forth herein.

165.    Plaintiff was at all material times the Owner of the motor vessel "DOBRUSH."

166.    Defendant was at all material times the Charterer of the M/V "DOBRUSH."

167.    By a charter party dated July 3, 2002, Plaintiff chartered the M/V "DOBRUSH"

to Defendant.

168.    Certain disputes arose between Plaintiff and Defendant regarding Defendant's

failure to pay freight due and owing under the charter party.

169.    As a result of Defendant's failure to pay the amounts due under the charter party,

Plaintiff has and will continue to suffer losses in the total principal sum of $1,090.42, as best can

now be estimated, exclusive of interest, reasonable attorneys fees and arbitration expenses.

170.    Pursuant to clause 56 of the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

171.    Despite due demand, Defendant failed to pay the amounts due and owing under the charter party. As a result, Plaintiff has or will soon commence arbitration proceedings on its claims.

172.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law. As best as can now be estimated, Plaintiff expects to recover the following amounts under the final arbitration award:

|   |   |   |
|---|---|---|
| A. | Principal claim: | $1,090.42 |
| B. | Attorney's fees and arbitration expenses: | $3,800.00 |
| **Total** | | **$4,890.42** |

## AS AND FOR THE FOURTEENTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF AGAINST DEFENDANT

173.    Paragraphs One through Three and Fifteen through Sixteen are hereby incorporated as Paragraphs One Hundred Seventy Three through One Hundred Seventy Seven and made part hereof as if more fully set forth herein.

178.    Plaintiff was at all material times the Owner of the motor vessel "NORDIC CONFIDENCE."

179.    Defendant was at all material times the Charterer of the M/V "NORDIC CONFIDENCE."

180.    By a charter party dated August 13, 2002, Plaintiff chartered the M/V "NORDIC CONFIDENCE" to Defendant.

181.    Certain disputes arose between Plaintiff and Defendant regarding Defendant's failure to pay freight and other expenses, including the war risk premium, due and owing under the charter party.

182.    As a result of Defendant's failure to pay the amounts due under the charter party, Plaintiff has and will continue to suffer losses in the total principal sum of $458.06, as best can now be estimated, exclusive of interest, reasonable attorneys fees and arbitration expenses.

183.    Pursuant to clause 56 of the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

184.    Despite due demand, Defendant failed to pay the amounts due and owing under the charter party. As a result, Plaintiff has or will soon commence arbitration proceedings on its claims.

185.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law. As best as can now be estimated, Plaintiff expects to recover the following amounts under the final arbitration award:

| | | |
|---|---|---|
| A. | Principal claim: | $458.06 |
| B. | Attorney's fees and arbitration expenses: | $3,800.00 |
| **Total** | | **$4,258.06** |

### AS AND FOR THE FIFTEENTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF AGAINST DEFENDANT

186.    Paragraphs One through Three and Fifteen through Sixteen are hereby incorporated as Paragraphs One Hundred Eighty Six through One Hundred Ninety and made part hereof as if more fully set forth herein.

191.    Plaintiff was at all material times the Owner of the motor vessel "DIMITRIS Y."

192.    Defendant was at all material times the Charterer of the M/V "DIMITRIS Y."

193.    By a charter party dated July 22, 2003, Plaintiff chartered the M/V "DIMITRIS Y" to Defendant.

194.    Certain disputes arose between Plaintiff and Defendant regarding Defendant's failure to pay freight, demurrage and detention due and owing under the charter party.

195.    As a result of Defendant's failure to pay the amounts due under the charter party, Plaintiff has and will continue to suffer losses in the total principal sum of $166,483.27, as best can now be estimated, exclusive of interest, reasonable attorneys fees and arbitration expenses.

196.    Pursuant to clause 56 of the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

197.    Despite due demand, Defendant failed to pay the amounts due and owing under the charter party.  As a result, Plaintiff has or will soon commence arbitration proceedings on its claims.

198.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law.  As best as can now be estimated, Plaintiff expects to recover the following amounts under the final arbitration award:

|   |   |   |
|---|---|---|
| A. | Principal claim: | $166,483.27 |
| B. | Estimated interest on principal claim; Approx. 4 years at 6%, compounded quarterly: | $54,431.83 |
| C. | Attorney's fees and arbitration expenses: | $50,000.00 |
| **Total** | | **$270,915.10** |

## AS AND FOR THE SIXTEENTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF AGAINST DEFENDANT

199.    Paragraphs One through Three and Fifteen through Sixteen are hereby incorporated as Paragraphs One Hundred Ninety Nine through Two Hundred Three and made part hereof as if more fully set forth herein.

204.    Plaintiff was at all material times the Owner of the motor vessel "WAGLAN LIGHT."

205.    Defendant was at all material times the Charterer of the M/V "WAGLAN LIGHT."

206.    By a charter party dated August 6, 2003, Plaintiff chartered the M/V "WAGLAN LIGHT" to Defendant.

207.    Certain disputes arose between Plaintiff and Defendant regarding Defendant's failure to pay freight and demurrage due and owing under the charter party.

208.    As a result of Defendant's failure to pay the amounts due under the charter party, Plaintiff has and will continue to suffer losses in the total principal sum of $59,255.01, as best can now be estimated, exclusive of interest, reasonable attorneys fees and arbitration expenses.

209.    Pursuant to clause 56 of the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

210.    Despite due demand, Defendant failed to pay the amounts due and owing under the charter party. As a result, Plaintiff has or will soon commence arbitration proceedings on its claims.

211.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law. As best as can now be estimated, Plaintiff expects to recover the following amounts under the final arbitration award:

| | | |
|---|---|---|
| A. | Principal claim: | $59,255.01 |
| B. | Estimated interest on principal claim; Approx. 4 years at 6%, compounded quarterly: | $19,373.47 |
| C. | Attorney's fees and arbitration expenses: | $35,000.00 |
| **Total** | | **$113,628.48** |

## AS AND FOR THE SEVENTEENTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF AGAINST DEFENDANT

212.    Paragraphs One through Three and Fifteen through Sixteen are hereby incorporated as Paragraphs Two Hundred Twelve through Two Hundred Sixteen and made part hereof as if more fully set forth herein.

217.    Plaintiff was at all material times the Owner of the motor vessel "HANDY SILVER."

218.    Defendant was at all material times the Charterer of the M/V "HANDY SILVER."

219.    By a charter party dated March 19, 2003, Plaintiff chartered the M/V "HANDY SILVER" to Defendant.

220.    Certain disputes arose between Plaintiff and Defendant regarding Defendant's failure to pay freight and demurrage due and owing under the charter party.

221.    As a result of Defendant's failure to pay the amounts due under the charter party, Plaintiff has and will continue to suffer losses in the total principal sum of $59,852.77, as best can now be estimated, exclusive of interest, reasonable attorneys fees and arbitration expenses.

222.    Pursuant to clause 56 of the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

223.    Despite due demand, Defendant failed to pay the amounts due and owing under the charter party. As a result, Plaintiff has or will soon commence arbitration proceedings on its claims.

224.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law. As best as can now be estimated, Plaintiff expects to recover the following amounts under the final arbitration award:

| | | |
|---|---|---|
| A. | Principal claim: | $59,852.77 |
| B. | Estimated interest on principal claim; Approx. 4 years at 6%, compounded quarterly: | $33,701.48 |
| C. | Attorney's fees and arbitration expenses: | $40,000.00 |
| **Total** | | **$133,554.25** |

## AS AND FOR THE EIGHTEENTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF AGAINST DEFENDANT

225.    Paragraphs One through Three and Fifteen through Sixteen are hereby incorporated as Paragraphs Two Hundred Twenty Five through Two Hundred Twenty Nine and made part hereof as if more fully set forth herein.

230.    Plaintiff was at all material times the Owner of the motor vessel "ZHE HAI."

231.    Defendant was at all material times the Charterer of the M/V "ZHE HAI."

232.    By a charter party dated July 22, 2003, Plaintiff chartered the M/V "ZHE HAI" to Defendant.

233.    Certain disputes arose between Plaintiff and Defendant regarding Defendant's failure to pay freight, detention, demurrage and other expenses due and owing under the charter party.

234.   As a result of Defendant's failure to pay the amounts due under the charter party, Plaintiff has and will continue to suffer losses in the total principal sum of $95,208.16, as best can now be estimated, exclusive of interest, reasonable attorneys fees and arbitration expenses.

235.   Pursuant to clause 56 of the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

236.   Despite due demand, Defendant failed to pay the amounts due and owing under the charter party. As a result, Plaintiff has or will soon commence arbitration proceedings on its claims.

237.   Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law. As best as can now be estimated, Plaintiff expects to recover the following amounts under the final arbitration award:

| | | |
|---|---|---|
| A. | Principal claim: | $95,208.16 |
| B. | Estimated interest on principal claim; Approx. 4 years at 6%, compounded quarterly: | $31,128.38 |
| C. | Attorney's fees and arbitration expenses: | $40,000.00 |
| **Total** | | **$166,336.54** |

## AS AND FOR THE NINETEENTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF AGAINST DEFENDANT

238.   Paragraphs One through Three and Fifteen through Sixteen are hereby incorporated as Paragraphs Two Hundred Thirty Eight through Two Hundred Forty Two and made part hereof as if more fully set forth herein.

243.   Plaintiff was at all material times the Owner of the motor vessel "SYLVIA."

244.   Defendant was at all material times the Charterer of the M/V "SYLVIA."

245.    By a charter party dated August 6, 2003, Plaintiff chartered the M/V "SYLVIA" to Defendant.

246.    Certain disputes arose between Plaintiff and Defendant regarding Defendant's failure to pay freight and other expenses due and owing under the charter party.

247.    As a result of Defendant's failure to pay the amounts due under the charter party, Plaintiff has and will continue to suffer losses in the total principal sum of $66,894.26, as best can now be estimated, exclusive of interest, reasonable attorneys fees and arbitration expenses.

248.    Pursuant to clause 56 of the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

249.    Despite due demand, Defendant failed to pay the amounts due and owing under the charter party. As a result, Plaintiff has or will soon commence arbitration proceedings on its claims.

250.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law. As best as can now be estimated, Plaintiff expects to recover the following amounts under the final arbitration award:

| | | |
|---|---|---|
| A. | Principal claim: | $66,894.26 |
| B. | Estimated interest on principal claim; Approx. 4 years at 6%, compounded quarterly: | $21,871.13 |
| C. | Attorney's fees and arbitration expenses: | $40,000.00 |
| **Total** | | **$128,765.39** |

## AS AND FOR THE TWENTIETH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF AGAINST DEFENDANT

251.   Paragraphs One through Three and Fifteen through Sixteen are hereby

incorporated as Paragraphs Two Hundred Fifty One through Two Hundred Fifty Five and made

part hereof as if more fully set forth herein.

256.   Plaintiff was at all material times the Owner of the motor vessel "SERASOU."

257.   Defendant was at all material times the Charterer of the M/V "SERASOU."

258.   By a charter party dated August 1, 2003, Plaintiff chartered the M/V

"SERASOU" to Defendant.

259.   Certain disputes arose between Plaintiff and Defendant regarding Defendant's

failure to pay freight and demurrage due and owing under the charter party.

260.   As a result of Defendant's failure to pay the amounts due under the charter party,

Plaintiff has and will continue to suffer losses in the total principal sum of $98,699.09, as best

can now be estimated, exclusive of interest, reasonable attorneys fees and arbitration expenses.

261.   Pursuant to clause 56 of the charter party, all disputes arising thereunder are to be

submitted to arbitration in London with English law to apply.

262.   Despite due demand, Defendant failed to pay the amounts due and owing under

the charter party.  As a result, Plaintiff has or will soon commence arbitration proceedings on its

claims.

263.   Interest, costs and attorneys' fees are routinely awarded to the prevailing party

under English law.  As best as can now be estimated, Plaintiff expects to recover the following

amounts under the final arbitration award:

| | A. | Principal claim: | $98,699.09 |
| | B. | Estimated interest on principal claim; Approx. 4 years at 6%, compounded quarterly: | $32,269.74 |
| | C. | Attorney's fees and arbitration expenses: | $40,000.00 |
| **Total** | | | **$170,968.8** |

## AS AND FOR THE TWENTY FIRST CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF AGAINST DEFENDANT

264.    Paragraphs One through Three and Fifteen through Sixteen are hereby incorporated as Paragraphs Two Hundred Sixty Four through Two Hundred Sixty Eight and made part hereof as if more fully set forth herein.

269.    Plaintiff was at all material times the Owner of the motor vessel "HANDY ROSELAND."

270.    Defendant was at all material times the Charterer of the M/V "HANDY ROSELAND."

271.    By a charter party dated September 5, 2002, Plaintiff chartered the M/V "HANDY ROSELAND" to Defendant.

272.    Certain disputes arose between Plaintiff and Defendant regarding Defendant's failure to pay freight, dead freight and other expenses due and owing under the charter party.

273.    As a result of Defendant's failure to pay the amounts due under the charter party, Plaintiff has and will continue to suffer losses in the total principal sum of $13,599.30, as best can now be estimated, exclusive of interest, reasonable attorneys fees and arbitration expenses.

274.    Pursuant to clause 56 of the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

275.    Despite due demand, Defendant failed to pay the amounts due and owing under the charter party. As a result, Plaintiff has or will soon commence arbitration proceedings on its claims.

276.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law. As best as can now be estimated, Plaintiff expects to recover the following amounts under the final arbitration award:

| | | |
|---|---|---|
| A. | Principal claim: | $13,599.30 |
| B. | Estimated interest on principal claim; Approx. 4 years at 6%, compounded quarterly: | $5,553.64 |
| C. | Attorney's fees and arbitration expenses: | $10,000.00 |
| **Total** | | **$29,152.94** |

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint;

B.    That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including, but not limited to, American Express Bank, ABN-AMRO Bank, Bank of America, Bank of New York, Deutsche Bank, Citibank, HSBC (USA) Bank, JP Morgan Chase, Standard Chartered Bank, and/or Wachovia Bank, which are due and owing to the Defendant, in the amount of $2,541,846.20 to secure the Plaintiff's claims, and that all persons claiming any interest in the

same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.    That this Court recognize and confirm any arbitration award or judgment rendered on the claims had herein as a Judgment of this Court;

D.    That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and

E.    That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated: January 3, 2006
       New York, NY

The Plaintiff,
GREAT HOPE SHIPPING COMPANY

By:

Nancy R. Peterson (NP 2871)
Patrick F. Lennon (PL 2162)
TISDALE & LENNON, LLC
11 West 42nd Street, Suite 900
New York, NY 10036
(212) 354-0025 (Phone)
(212) 869-0067 (Fax)
Npeterson@Tisdale-Lennon.com
Plennon@Tisdale-Lennon.com

## ATTORNEY'S VERIFICATION

State of Connecticut  )

                        )      ss.:      Town of Southport

County of Fairfield    )

1. My name is Nancy R. Peterson.

2. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am an associate in the firm of Tisdale & Lennon, LLC, attorneys for the Plaintiff.

4. I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7. I am authorized to make this Verification on behalf of the Plaintiff.

Dated:        Southport, Connecticut
              January 3, 2006


                                    Nancy R. Peterson

EXHIBIT 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

PROGRESS BULK CARRIERS LIMITED and    :
MED BROKERAGE AND MANAGEMENT
CORPORATION LIMITED,    :

          Plaintiffs,    :

  - against -    :

SNTM CNAN a/k/a SICIETE NATIONALE DE    :
TRANSPORTS MARITIMES, SOCIETE
NATIONALE DE TRANSPORTES MARITIMES, :
CNAN GROUP SPA or COMPAGNIE
NATIONALE DE NAVIGATION,    :

          Defendant.    :
-------------------------------------------------------------X





### <u>VERIFIED COMPLAINT</u>

Plaintiffs, PROGRESS BULK CARRIERS LIMITED (hereinafter "Progress Bulk") and

MED BROKERAGE AND MANAGEMENT CORPORATION LIMITED (hereinafter "Med

Brokerage") (collectively referred to as "Plaintiffs"), by and through their attorneys, Tisdale &

Lennon, LLC, as and for their Verified Complaint against the Defendant SNTM CNAN a/k/a

SOCIETE NATIONALE DE TRANSPORTES MARITIMES, SICIETE NATIONALE DE

TRANSPORTS MARITIMES, CNAN GROUP SPA or COMPAGNIE

NATIONALE DE NAVIGATION (hereinafter referred to as Defendant or "CNAN"), allege,

upon information and belief, as follows:

    1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333.

    2.    At all times material to this action, Plaintiff Progress Bulk was, and still is, a

foreign company duly organized and existing under the laws of the Bahamas.

3.      At all times material to this action, Plaintiff Med Brokerage was, and still is, a domestic company duly organized and existing under the laws of New York and was at all material times the managing agent for Plaintiff Progress Bulk.

4.      Upon information and belief, Defendant CNAN was, and still is, a foreign corporation or other business entity organized under and existing by virtue of the laws of Algeria.

## AS AND FOR THE FIRST CAUSE OF ACTION
## ON BEHALF OF PLAINTIFFS AGAINST DEFENDANT

5.      Paragraphs One through Four are hereby incorporated as Paragraphs Five through Eight and made part hereof as if more fully set forth herein.

9.      Defendant CNAN was at all material times the Owner of the motor vessel "HADJAR."

10.     Plaintiff Progress Bulk was at all material times the Charterer of the M/V "HADJAR."

11.     By a charter party dated January 8, 2004, Plaintiff Progress Bulk chartered the M/V "HADJAR" from the Defendant.

12.     Certain disputes arose between the parties regarding Defendant's failure to present/provide the M/V "HADYAR" at dry dock in Tuzia in breach of the charter party contract.

13.     As a result of Defendant's breach of the charter party contract, Plaintiff Progress Bulk has and will continue to suffer losses in the total principal sum of $18,223,500.00, as best can now be estimated, exclusive of interest, reasonable attorneys fees and arbitration expenses.

14.     Pursuant to clause 48 of the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

15.    Despite due demand, Defendant failed to pay the amounts due and owing under the charter party. As a result, Plaintiffs have commenced arbitration proceedings on the claims had herein.

16.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law. As best as can now be estimated, Plaintiff Progress Bulk expects to recover the following amounts under the final arbitration award:

| | | |
|---|---|---|
| A. | Principal claim: | $18,223,500.00 |
| B. | Estimated interest on principal claim;<br>Approx. 4 years at 3%, compounded quarterly: | $2,200,908.87 |
| C. | Attorney's fees and arbitration expenses: | $1,500,000.00 |
| **Total** | | **$21,924,408.87** |

17.    The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees including, but not limited to, American Express Bank, ABN-AMRO Bank, Bank of America, Bank of New York, Deutsche Bank, Citibank, HSBC (USA) Bank, JP Morgan Chase, Standard Chartered Bank, and/or Wachovia Bank which are believed to be due and owing to the Defendant.

18.    The Plaintiffs seek an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant, held by

3

the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiffs' claims as described above.

## AS AND FOR THE SECOND CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF PROGRESS BULK AGAINST DEFENDANT

19.     Paragraphs One through Four are hereby incorporated as Paragraphs Nineteen through Twenty-Two and made part hereof as if more fully set forth herein.

23.     Defendant was at all material times the Owner of the motor vessel "NEMEMCHA."

24.     Plaintiff Progress Bulk was at all material times the Charterer of the M/V "NEMEMCHA."

25.     By a charter party dated July 12, 2002, Plaintiff Progress Bulk chartered the M/V "NEMEMCHA" from Defendant.

26.     Certain disputes arose between the parties regarding Defendant's failure to properly deduct/pay off-hire and other expenses due and owing under the charter party.

27.     As a result of Defendant's failure to pay/properly deduct the amounts due under the charter party, Plaintiff Progress Bulk has and will continue to suffer losses in the total principal sum of $201,389.40, as best can now be estimated, exclusive of interest, reasonable attorneys fees and arbitration expenses.

28.     Pursuant to clause 48 of the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

29.     Despite due demand, Defendant failed to pay the amounts due and owing under the charter party. As a result, Plaintiff Progress Bulk has or will soon commence arbitration proceedings on its claims.

30.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party

under English law.  As best as can now be estimated, Plaintiff Progress Bulk expects to recover

the following amounts under the final arbitration award:

|   |   |   |
|---|---|---|
| A. | Principal claim: | $201,389.40 |
| B. | Estimated interest on principal claim;<br>Approx. 4 years at 6%, compounded quarterly: | $54,212.54 |
| C. | Attorney's fees and arbitration expenses: | $50,000.00 |
| **Total** | | **$305,601.94** |

31.    The Defendant cannot be found within this District within the meaning of Rule B

of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of

Civil Procedure, but, upon information and belief, Defendant has, or will have during the

pendency of this action, assets within this District and subject to the jurisdiction of this Court,

held in the hands of garnishees including, but not limited to, American Express Bank, ABN-

AMRO Bank, Bank of America, Bank of New York, Deutsche Bank, Citibank, HSBC (USA)

Bank, JP Morgan Chase, Standard Chartered Bank, and/or Wachovia Bank which are believed to

be due and owing to the Defendant.

32.    The Plaintiff seeks an order from this court directing the Clerk of Court to

issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental

Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States

Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant, held by

the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendant,

and to secure the Plaintiff Progress Bulk's claims as described above.

**WHEREFORE**, Plaintiffs pray:

A.      That process in due form of law issue against the Defendant, citing it to appear

and answer under oath all and singular the matters alleged in the Complaint;

B.      That since the Defendant cannot be found within this District pursuant to

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue

an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment

pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and

also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all tangible or

intangible property in whatever form or any other funds held by any garnishee, including, but not

limited to, American Express Bank, ABN-AMRO Bank, Bank of America, Bank of New York,

Deutsche Bank, Citibank, HSBC (USA) Bank, JP Morgan Chase, Standard Chartered Bank,

and/or Wachovia Bank, which are due and owing to the Defendant, in the amount of

**$22,230,010.81** to secure the Plaintiffs' claims, and that all persons claiming any interest in the

same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters

alleged in the Complaint;

C.      That this Court recognize and confirm any arbitration award or judgment rendered

on the claims had herein as a Judgment of this Court;

D.      That this Court retain jurisdiction over this matter through the entry of any

judgment or award associated with any of the claims currently pending, or which may be

initiated in the future, including any appeals thereof; and

E.      That the Plaintiffs have such other, further and different relief as the Court

may deem just and proper.

6

Dated: January 9, 2006
New York, NY

The Plaintiffs,
PROGRESS BULK CARRIERS LIMITED and
MED BROKERAGE AND MANAGEMENT
CORPORATION LIMITED

By:

Nancy R. Peterson (NP 2871)
Patrick F. Lennon (PL 2162)
TISDALE & LENNON, LLC
11 West 42nd Street, Suite 900
New York, NY 10036
(212) 354-0025 (Phone)
(212) 869-0067 (Fax)
Npeterson@Tisdale-Lennon.com
Plennon@Tisdale-Lennon.com

## ATTORNEY'S VERIFICATION

State of Connecticut  )
                      )    ss.:    Town of Southport
County of Fairfield   )

1.    My name is Nancy R. Peterson.

2.    I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3.    I am an attorney in the firm of Tisdale & Lennon, LLC, attorneys for the

Plaintiffs.

4.    I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information

and belief.

5.    The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiffs and agents

and/or representatives of the Plaintiffs.

6.    I am authorized to make this Verification on behalf of the Plaintiffs.

Dated:        Southport, Connecticut
              January 9, 2006

Nancy R. Peterson

8

# EXHIBIT 6

Keith W. Heard (KH-8578)
Michael J. Walsh (MW-6578)
Burke & Parsons
100 Park Avenue
New York NY 10017-5533
(212) 354-3800

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FEB 05 2008
U.S.D.C. S.D. N.Y.
CASHIERS

JUDGE CROTTY

08 CV 1201

---

CNAN GROUP S.P.A.,

                           Plaintiff,

        -against-

HASSAN ALI RICE EXPORT CO. d/b/a
IGEN SEA SHIPPING,

                           Defendant.

---

VERIFIED COMPLAINT

---

Plaintiff, CNAN GROUP SPA (hereinafter "Plaintiff"), by its attorneys Burke & Parsons, as and for its Verified Complaint against defendant, HASSAN ALI RICE EXPORT CO. d/b/a IGEN SEA SHIPPING (hereinafter "Defendant"), alleges upon information and belief as follows:

1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime charter party contract. This action also falls under the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

## THE PARTIES

2.    At all times relevant hereto, plaintiff CNAN Group S.p.a. was and still is a foreign corporation organized and existing under and by virtue of the laws of Algeria with an office and place of business at 2 Quai No. 09, Nouvelle Gare Maritime, Alger Port, BP 200, Algeria.

3.    At all times relevant hereto, defendant Hassan Ali Rice Export Co. ("HAREC") was and still is a foreign sole proprietorship organized and existing under and by virtue of the laws of a foreign country with an office and place of business at Cotton Exchange Building, I.I. Chundrigar Road, Karachi, Pakistan.

4.    At all times relevant hereto, Igen Sea Shipping ("Igen") was and still is simply a trade name under which HAREC conducts or has conducted some of its business. HAREC d/b/a Igen purportedly has an office located at Iftikar Chambers, Hasrat Mohani Road, Karachi, Pakistan.

## THE CLAIM

5.    At all times relevant hereto, Plaintiff was the owner of the motor vessel "AIN OUSSERA" (hereinafter the "Vessel").

6.    Pursuant to a charter dated November 7, 2005 on the GENCON 1994 form as amended (the "Charter"), Plaintiff, as owner, chartered the Vessel to Defendant, Igen Sea Shipping, as charterer. The charter was for one voyage from Pakistan to West Africa, loading at one safe port/one-two safe berth(s) Karachi, Pakistan, and discharging at one-three safe port(s) safe berth(s) Douala, Cameroon, to Dakar, Senegal range. The Vessel was chartered to carry a cargo of about 25,000 metric tons. of bagged rice, which was the Vessel's full load.

7.    A dispute has arisen between the parties due to the failure of the Defendant to make timely payments of demurrage and damages for detention due and owing under the Charter.

8.    Despite due demand, the Defendant has refused to make timely payment and the foregoing amounts remain unpaid and owing.

9.    As a result of the Defendant's breaches of the Charter, Plaintiff has sustained damages in the total principal sum of $249,978.08 exclusive of interest, costs and attorneys fees.

10.    Pursuant to Paragraph 25 of the Charter, all disputes arising thereunder are to be submitted to arbitration in London and are to be governed by English law.

11.    Plaintiff has commenced arbitration against Defendant Igen Sea Shipping in accordance with the terms of the Charter.

12. In addition to an attachment in the full principal amount of the claim as outlined in Paragraph 10 above, Plaintiff also seeks an attachment over an additional sum to cover estimated interest as well as its anticipated attorneys' fees and costs, all of which are routinely recoverable under English law in London arbitration. (*See Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 265 (2d Cir. 2002), where the attachment that the Court of Appeals reinstated covered "an amount that includes interest and anticipated attorneys' and arbitrators' fees.")

13. Plaintiff estimates, as nearly as can be computed presently, these additional damages and costs to be $193,054.71, consisting of interest in the sum of $95,554.71 (calculated from the time the claim arose until January 2010 to include the estimated time frame within which arbitration will be completed), and $97,500.00 in estimated U.K. counsel fees, costs, and arbitrators' fees which will be incurred in conjunction with the London arbitration, and which are recoverable there.

14. Based upon the foregoing, therefore, the total sum sought to be attached in this action with respect to Plaintiff's claims is $443,032.79.

15. For its part, Plaintiff has satisfied and performed all of its obligations under the terms of the Charter.

## THE RELATIONSHIP BETWEEN HAREC AND IGEN

16. Upon information and belief, defendant Igen Sea Shipping has no independent existence, corporate or otherwise, as an entity entitled to limited liability under Pakistani law. The Securities and Exchange Commission of Pakistan ("SECP"), which is the regulatory body that maintains a single register for all Registered Companies in Pakistan under the Companies Ordinance, 1984 -- whether they be private, public or publicly listed -- does not have any record or listing under the name "Igen Sea Shipping."

17. Upon information and belief, to be entitled to limited liability under the Pakistani Companies Ordinance, an entity is required to include the word "Limited" in its company name, Furthermore, private limited companies under the Pakistani Companies Ordinance (i.e., those limited to no more than 50 shareholders), are required to include the word "Private" in their company names. Neither the words "Limited" nor "Private" appear in the Igen Sea Shipping name on the Charter executed for the Vessel or on business letterhead that Plaintiff has received from Igen

Sea Shipping or on the name plate next to the door where Igen's "place of business" is allegedly located.

18.  Upon information and belief, there is no record in the database of National Tax Numbers maintained by the Government of Pakistan's Central Board of Revenue ("CBR") to indicate that an entity named "Igen Sea Shipping" is registered as an income tax assessee in Pakistan.

19.  Upon information and belief, the business address given in the Charter for Igen Sea Shipping at Iftikhar Chambers, Hasrat Mohani Road, Karachi, Pakistan shows no evidence of a "going business concern " being conducted at that location. Although there is (or was) an "Igen Sea Shipping" name-plate near an office door in the commercial building located at this address in Karachi, visits paid to these premises during normal business hours revealed the office to be shuttered, padlocked and in a condition demonstrating that it had not been opened in a long while. Inquiries with the building's caretaker and with two other tenants in nearby offices in the same building indicated that they had never seen the purported Igen Sea Shipping office open at any time.

20.  Upon information and belief, the name Igen Sea Shipping is no more than a sham through which defendant HAREC conducts its business.

21.  Upon information and belief, the sole purpose of Igen Sea Shipping is to act as the "chartering arm" of defendant HAREC and Igen Sea Shipping has no separate independent identity apart from HAREC.

22.  HAREC dominates and controls Igen Sea Shipping and conducts the latter's business operations as if they were HAREC's own, such that HAREC is Igen Sea Shipping's alter ego and vice versa.

23.  Upon information and belief and, in the alternative, the name Igen Sea Shipping has been used and interposed by HAREC as a trade or fictitious name as an artifice to divert and defraud lawful creditors of HAREC and is an attempt to improperly insulate HAREC from debts incurred for its ultimate benefit.

24.  It is not general commercial practice in the maritime industry, or anywhere else, for independent companies to make large payments on behalf of other independent companies on contracts to which the former are not a party.

25.  Upon information and belief, HAREC has made freight, partial demurrage and brokerage commission payments, and has paid port expenses with respect to the Vessel under the Charter at issue, even though, under the terms of the contract, those obligations rest upon Igen.

26.  Upon information and belief, HAREC directed that payments allegedly due from Plaintiff to Igen under the Charter be paid to a bank account in Karachi whose beneficiary was stated to be Hassan Ali Rice Export Co.

27.  Upon information and belief, HAREC has accepted, without reservation or any indication that it was acting solely in a representative capacity, communications with respect to the operation of the Vessel as though it was, in fact, the charterer of the Vessel instead of Igen Sea Shipping.

28.  Upon information and belief, and in the alternative, HAREC acted as an undisclosed or partially disclosed principal in the charter parties entered into by Igen Sea Shipping , such that HAREC was a party thereto and assumed the liabilities thereof, and is obligated for breaches of that Charter.

29.  Upon information and belief, and in the alternative, HAREC and Igen Sea Shipping were partners and/or joint venturers in the Charter such that HAREC is liable for debts arising out of the Charter.

## RULE B ALLEGATIONS

30.  Upon information and belief, and after investigation, the Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, annexed to the Federal Rules of Civil Procedure, but upon information and belief Defendant has, or will have during the pendency of this action, assets within this District comprising, *inter alia,* cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of the Defendant (hereinafter "Assets"), moving through garnishee banking institutions including but not limited to ABN Amro; American Express Bank; Bank of America NA; Bank of New York; Citibank; Deutsche Bank AG; HSBC Bank USA NA; JP Morgan Chase Bank; Standard Chartered Bank; UBS AG and/or Wachovia Bank.

31.  The Plaintiff seeks an order from this Court directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the

Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia,* any assets of the Defendant held by the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendant and to secure Plaintiff's claims as described above.

WHEREFORE, Plaintiff prays:

a.    That process in due form of law according to the usual practice of this Court may issue against Defendant citing it to appear and answer the foregoing, and failing such appearance and answer, to have judgment by default against the Defendant in the principal amount of the claim plus interest, costs and attorneys' fees;

b.    That since Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching and restraining all Assets of Defendant in an amount up to and including the sum of $443,032.79 including but not limited to any cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due or for the benefit of Defendant including, but not limited to such Assets as may be held, received or transferred in their own name or as may be held, received or transferred for their benefit at, moving through, or within the possession, custody or control of the said afore banking institutions including but not limited to ABN Amro; American Express Bank; Bank of America NA; Bank of New York; Citibank; Deutsche Bank AG; HSBC Bank USA NA; JP Morgan Chase Bank; Standard Chartered Bank; UBS AG and/or Wachovia Bank and/or any other garnishee(s) upon whom a copy of the Process of Maritime Attachment and Garnishment issued in this action may be served;

c.    That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary in order to give effect to the aforesaid London arbitration; and

    d.   For such other and further or different relief as this Court may deem just and proper in the premises.

Dated:   New York, NY
           February _5_, 2008

                          BURKE & PARSONS
                          Attorneys for Plaintiff
                          CNAN Group S.p.a.

           By     _____
                          Keith W. Heard (KH-8578)
                          100 Park Avenue
                          New York NY  10017-5533
                          (212) 354-3800

## VERIFICATION

STATE OF NEW YORK        )

COUNTY OF NEW YORK    )

Keith W. Heard, being duly sworn, deposes and says:

1. I am a member of the bar of this Honorable Court and of the firm of Burke & Parsons, attorneys for the Plaintiff.

2. I have read the foregoing Complaint and I believe the contents thereof are true.

3. This Verification has been made by deponent and not by Plaintiff because Plaintiff is a foreign corporation, and has no officers or directors within this jurisdiction.

4. The sources of my information and belief are documents provided to me and statements made to me by representatives of the Plaintiff.

_____

Keith W. Heard

Sworn to before me this
_5 TH_ day of February, 2008.

_____
Notary Public

8974_001c.doc

Penny S. Martinez
Notary Public State of New York
No. 01MA4865021 Qualified in Suffolk County
Certificate Filed in New York County
Commission Expires 29 September 2010

VERIFIED COMPLAINT

# EXHIBIT 7

'UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

FLAME MARITIME LIMITED,                          :

                                                            :        07 Civ. 4426 (WHP)

                                                            :

                           Plaintiff,                       :

                                                            :        MEMORANDUM AND ORDER

           -against-                                        :

                                                            :

HASSAN ALI RICE EXPORT COMPANY,       :

                                                            :

                           Defendant.                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

          Defendant Hassan Ali Rice Export Company ("Hassan") moves pursuant to Fed.

R. Civ. P. Supp. Rule E(4)(f) to vacate this Court's May 31, 2007 ex parte order of a maritime

attachment and garnishment (the "Order"). Alternatively, Hassan seeks to reduce the security of

Plaintiff Flame Maritime Limited ("Flame") pursuant to Supp. Rule E(6). For the following

reasons, Hassan's motion is denied in part and granted in part.

BACKGROUND

          On January 29, 1999, Hassan tendered white rice to Flame for transport from

Karachi, Pakistan to Moroni, Comoros Islands aboard the M/V Junior M. (Declaration of Owen

Duffy, dated Aug. 13, 2007 ("Duffy Decl.") ¶ 11.) Hassan allegedly failed to pay demurrage in

the amount of $59,721. (Duffy Decl. ¶ 13.) Flame initiated arbitration against Hassan in

London, England seeking to recover the unpaid demurrage. (Duffy Decl. ¶ 14.) On December

21, 1999, the arbitral panel ordered Hassan to pay Flame $55,988,77 and interest at an annual

rate of 7.5% from May 21, 1999 until the date of satisfaction (the "Arbitration Award"). (Duffy

Decl. ¶ 18.) On February 22, 2000, Flame filed an action to enforce the Arbitration Award

against Hassan in Karachi, Pakistan. (Duffy Decl. ¶ 22.) Nearly six years later, the Pakistani

High Court entered a decree on January 23, 2006 enforcing the Arbitration Award in the amount

of $55,988.77 plus £4,800 (the "Pakistani Judgment"). (Duffy Decl. ¶ 23.) The Pakistani Court

did not confirm the award of interest because it was contrary to Islamic law. (Duffy Decl. ¶ 24.)

Flame filed an application to execute the Pakistani Judgment, and Hassan appealed it. (Duffy

Decl. ¶¶ 25-26.) The High Court scheduled an appellate conference for May 19, 2007, but later

adjourned it sine die. (Duffy Decl. ¶¶ 27-28.) No further proceedings have occurred in the

Pakistani courts.

On May 30, 2007, Flame filed this maritime action against Hassan seeking an

attachment pending the outcome of Hassan's appeal. This Court issued the Order, which

authorized Flame to attach up to $150,000 of Hassan's assets located within this district.

Pursuant to the Order, Flame attached two electronic fund transfers in the amounts of $62,200

and $60,000, respectively. (Duffy Decl. ¶¶ 34-35.)

## DISCUSSION

Hassan argues that the Attachment should be vacated because Flame has full

security for its claims. Hassan alternatively contends that, if an order of vacatur does not issue,

the amount of security should be reduced.

### I. Standard for Vacatur

Rule E(4)(f) of the Supplemental Rules provides: "[W]henever property is

arrested or attached, any person claiming an interest in it shall be required to show why the arrest

or attachment should not be vacated or other relief granted consistent with these rules." Fed. R.

2

Civ. P. Supp. Rule E(4)(f); Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434,

445-46 (2d Cir. 2006); Winter Storm Shipping Ltd. v. TPI, 310 F.3d 263, 272 (2d Cir. 2002); Sea

Transp. Contractors, Ltd. v. Indus. Chemiques du Senegal, 411 F. Supp. 2d 386, 390 (S.D.N.Y.

2006). To sustain any attachment, the plaintiff must demonstrate that "(1) it has a valid prima

facie admiralty claim against the defendant; (2) the defendant cannot be found within the district;

(3) the defendant's property may be found within the district; and (4) there is no statutory or

maritime law bar to the attachment." Aqua Stoli, 460 F.3d at 445. Courts may also vacate an

attachment in certain limited circumstances where equity so demands. See Aqua Stoli, 460 F.3d

at 444. Specifically, vacatur is proper if "the plaintiff has already obtained sufficient security for

the potential judgment, by attachment or otherwise." Aqua Stoli, 460 F.3d at 445.

Because it is uncontested that the formal requirements for attachment have been

satisfied by Flame, the only possible grounds for vacatur are equitable. Hassan argues that the

Order should be vacated because it provided Flame with full security by furnishing a bank

guarantee for the amount of the Pakistani Judgment. However, because Hassan has not proffered

evidence of such a guarantee, the attachment cannot be vacated on this ground. See Mardas

Marmara Deniz Isletmeciligi A.S. v. Fast Shipping & Trading Co., 07 Civ. 179 (PKL), 2007 WL

2229058, at *4 (S.D.N.Y. Aug. 2, 2007) (party seeking to vacate attachment on equitable

grounds bears the burden of demonstrating sufficient security exists for potential judgment).


II. Attachment Reduction

In the alternative, Hassan seeks a reduction in the amount of the attachment.

"Because pre-judgment attachments are usually based upon reasonable estimates and not precise

facts, parties often attach amounts which are later deemed excessive in light of changes in

circumstance." <u>Dongbu Express Co., Ltd. v. Navois Corp.</u>, 944 F. Supp. 235, 237 (S.D.N.Y. 1996). As such, "a reduction in security is 'freely granted upon a showing that the [attachment] is excessive.'" <u>Dongbu</u>, 944 F. Supp. at 237 (quoting 7A James W. Moore et al., Moore's Federal Practice P E14 (2d ed. 1996)); <u>see also</u> Fed. R. Civ. P. Supp. Rule E(6) ("Whenever security is taken, the court may, on motion and hearing, for good cause shown reduce the amount of security given."); <u>Mardas</u>, 2007 WL 2229058, at *3 (same); <u>Transportes Navieros y Terrestes v. Fairmount Heavy Transp. N.V.</u>, 07 Civ. 3076 (LAP), 2007 WL 1989309, at *4 (S.D.N.Y. July 6, 2007) (same).

The Order authorizes Flame to attach up to $150,000 of Hassan's assets. That amount exceeds the $55,988 plus £4,800 awarded in the Pakistani action. Flame claims that the difference comprises the interest that has accrued since the entry of the Arbitration Award. However, the Pakistani High Court excluded interest, and Flame has not appealed. Because Flame stands to recover no more than the Pakistani Judgment, this Court will reduce the attachment amount to reflect the maximum award that Flame can recover in those proceedings.

## CONCLUSION

For the foregoing reasons, Defendant Hassan Ali Rice Expert Company's motion to vacate this Court's Order for Process of Maritime Attachment and Garnishment is denied. However, Hassan's motion to reduce the security to the sum of the Pakistani Judgment is granted. The parties are directed to submit an amended order by September 11, 2007.

Dated: August 31, 2007
      New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

George Murray, Esq.
Chalos, O'Connor & Duffy LLP
366 Main Street
Port Washington, NY 11050
*Counsel for Plaintiff*

Charles Edmund Murphy, Esq.
Lennon, Murphy & Lennon LLC
420 Lexington Avenue
Suite 300
New York, NY 10170
*Counsel for Defendant*

5